## UNITED STATES v. KRAKOWER.
### No. 35.

Circuit Court of Appeals, Second Circuit.

Nov. 2, 1936.

Harold Stern, of New York City, for appellant.

Leo J. Hickey, U. S. Atty., of Brooklyn, N. Y. (Frank J. Parker, Asst. U. S. Atty., of New York City, and Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The only point for consideration in this case is whether the defendant could be convicted under section 1393 of title 10 of the United States Code (10 U.S.C.A. § 1393) of wearing "the duly prescribed uniform of the United States Army." He was found at the Army Base in Brooklyn, wearing the "Fatigue Uniform" of the army— a suit of blue denim overalls, indistinguishable from ordinary workmen's overalls except that the buttons bore the words, "U. S. Army." The regulation in evidence was entitled, "The Prescribed Uniform," and described in detail several "regulation uniforms," all totally unlike overalls. However, there is a "Fatigue Uniform" prescribed for enlisted men while engaged in dirty work; it is an ordinary suit of blue denim overalls, except that the buttons are marked as above stated. This is used on all such occasions, and is also prescribed by another regulation, not in evidence.

The principal, and indeed in our view the only, point at issue is whether this "Fatigue Uniform" is within the statute. It is true that the particular article, "the," suggests a single uniform, but that cannot have been intended, for the regulation prescribes several kinds of "regulation uniforms," the wearing of each one of which must certainly be forbidden. We think that the phrase covered any kind of uniform, prescribed by any regulation, and that the particular article was used comprehensively, just as one would say that a man understood *the* taste of a city in theaters or pictures, using the word to cover various sensibilities. It is of course true that it cannot be unlawful to wear blue denim overalls; many workmen wear them daily. But these are not the fatigue uniforms, for they do not have army buttons. Nor do they fall within that other part of the section which forbids wearing any distinctive part of the uniform, because there is nothing distinctive in the fatigue uniform except the buttons. True, a man might as effectively masquerade as a soldier in fatigue uniform if he used ordinary overalls; and there is perhaps little use in including overalls among the proscribed apparel; yet there is some. For example, in this very case the defendant might not have succeeded in entering the army post in overalls, or in smuggling them in, and so effecting the disguise he wished; certainly it facilitated his purposes to put on a suit which he found at hand. Besides, such considerations are in any case beside the point; if this was a "prescribed uniform," civilians must not wear it and it is of no moment whether they might lawfully disguise themselves as well by wearing civilian overalls.

The other points touch the conduct of the trial; substantially all of them raise matters to which no objection was taken at the time, and which are in any event frivolous. The defendant went on the stand and admitted every element of the crime; that is, that he put on the overalls, which he knew to be the "fatigue uniform." Nothing more was necessary; it was not essential to show that he did so to gamble at the post, or to do anything else. Possibly it is true that the trial judge showed some animus against him, but as there was no possible justification for an acquittal we will not look jealously at what, in a case where there was any dispute, might detain us. The notion that the accused has some sort of rights in a wayward and perverse verdict, rendered in the face of the conceded facts, has nothing to commend it, and is defensible neither in law, in morals, nor in common sense.

Judgment affirmed.