**GASTON v. UNITED STATES.**

No. 102.

Municipal Court of Appeals for the
District of Columbia.

Oct. 26, 1943.

P. Bateman Ennis, of Washington, D. C., for appellant.

John P. Burke, Asst. U. S. Atty., of Washington, D. C. (Edward M. Curran, U. S. Atty., and John B. Diamond, Asst. U. S. Atty., both of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Defendant was tried upon an information charging that he "not being an officer or enlisted man of the United States Army, did wear the duly prescribed uniform of a Captain in the United States Army; and two 'U.S.' insignias on coat lapels, Captain's bars on shoulders, against the form of the statute[1] in such case made and provided."

Trial was by jury; defendant was found guilty and judgment entered, from which this appeal is prosecuted.

It was admitted that on the date charged and on a prior occasion defendant was present at the "canteen" conducted by the National Press Club for the entertainment of service men, and on these occasions wore a uniform similar in all respects to that of a captain in the United States Army, except that upon the insignia "U. S." on the collar lapel, there were superimposed the letters "NY". The letters "U.S." were 7/16ths of an inch in height; the letters "NY" 3/16ths of an inch. The defense was that the uniform, with the distinguishing letters superimposed on the insignia, was that of the New York National Guard, not that of the United States Army;

that while the New York National Guard is included in "The Army of the United States"[2] it is not a part of the "United States Army" as that term is used in the statute, and that the wearing of its uniform was not unlawful.

Defendant entered the New York State Guard as a private May 15, 1918. He was commissioned second lieutenant on July 30, 1918. On November 25, 1918, he received a commission as captain. On December 30, 1918, he was placed on the state reserve list, from which he was honorably discharged on October 11, 1926.

On June 27, 1922, the New York State Guard was federally recognized and became a unit of the National Guard. Thereby the enlisted personnel automatically became members of the National Guard organization; but officers were required to make individual applications for federal recognition and to submit to examination by a board of officers appointed by the Secretary of War. If approved, formal commissions were issued and their names entered on the records of the Personnel Division of the National Guard Bureau of the War Department. Defendant did not make application, did not receive a commission, and his name has not at any time appeared upon the register of National Guard officers.

I.

Section 1393, Title 10, U.S. Code, 10 U. S.C.A. § 1393 (National Defense Act of June 3, 1916, Section 125) makes it unlawful for any person "not an officer or enlisted man of the United States Army, Navy, Marine Corps, or Coast Guard, to wear the duly prescribed uniform of the United States Army, Navy, Marine Corps or Coast Guard, or any distinctive part of such uniform, or a uniform any part of which is similar to a distinctive part of the duly prescribed uniform". It contains the following exception: "Provided, That the foregoing provision shall not be construed so as to prevent officers or enlisted men of the National Guard from wearing, in pursuance of law and regulations, the uniform lawfully prescribed to be worn by such officers or enlisted men of the National Guard."

After excepting under stated conditions members of certain organizations, and in-

---

[1] U.S.Code, Title 10, Sec. 1393, 10 U.S. C.A. § 1393, see infra.

[2] U.S.Code, Title 10, Sec. 2, 10 U.S.C.A.

§ 2, see infra. This only applies to "the National Guard while in the service of the United States".

structors and members of cadet corps of public high schools and universities, the statute further provides: "That the uniforms worn by officers or enlisted men of the National Guard, or by the members of the military societies or the instructors and members of the cadet corps referred to in the preceding proviso shall include some distinctive mark or insignia to be prescribed by the Secretary of War or the Secretary of the Navy to distinguish such uniforms from the uniforms of the United States Army, Navy, Marine Corps, and Coast Guard: And provided further, That the members of the military societies and the instructors and members of the cadet corps hereinbefore mentioned shall not wear the insignia of rank prescribed to be worn by officers of the United States Army, Navy, Marine Corps, or Coast Guard, or any insignia of rank similar thereto."

"The Army of the United States" as defined in Section 1 of the National Defense Act of 1916, U. S. Code, Title 10, sec. 2, 10 U.S.C.A. § 2, "shall consist of the Regular Army, the National Guard of the United States, the National Guard while in the service of the United States, the Officers' Reserve Corps, the Organized Reserves, and the Enlisted Reserve Corps."

To avoid confusion or misunderstanding Congress has specifically defined the meaning of the terms here employed to designate these several component parts of the Army, each of which it established as a separate entity.[3] "National Guard" as used in the Act refers to the state organization as distinguished from the "National Guard of the United States." (Sec. 71; U. S. Code, Title 32, Sec. 4b, 32 U.S.C.A. § 4b).

Pursuant to the concluding clause of Section 1393 requiring that uniforms worn by officers of the National Guard "shall include some distinctive mark or insignia to be prescribed by the Secretary of War * * * to distinguish such uniforms *from the uniforms of the United States Army*" (italics supplied) the Secretary promulgated Army Regulation 600-35, paragraph 24, which, after prescribing for the Army an insignia for collar and lapel of block letters "U. S. 7/16 inch in height", continues: "To designate officers of the Federally recognized National Guard the letters forming the abbreviation of the name of the State, as prescribed in paragraph 64, 3/16 inch in height superimposed on the 'U.S.'"

Whether Sec. 1393, referring to the "duly prescribed uniform of the United States Army" indicated the "Regular Army" or the "Army of the United States" is immaterial, for the uniforms of both, including insignia, are identical.[4]

The proviso whereby the restriction on wearing the Army uniform should not be construed to prevent officers of the National Guard wearing the uniform of that organization "in pursuance of law and regulations", makes it evident that Congress contemplated that the wearing by a National Guard officer of his uniform, although it bore a distinctive mark, without this saving clause could be a violation of the law. To hold otherwise would render the exception unnecessary and meaningless.

To have the benefit of this proviso defendant must have been an officer of the National Guard. His contention that he was such an officer is based upon his status as an officer on the reserve list of the New York State Guard when that organization was federalized in 1922. He attacks the validity of the honorable discharge in 1926, claiming that he left the United States after he was placed on the reserve list in 1918, and remained abroad until after the date of his discharge; that he was not officially notified of his discharge or the proceedings incident thereto. Shortly thereafter he returned and then discovered that the action had been taken. The necessity for notice was not shown, and it has been held that military status is governed by rules of military and not civil law; that due process does not require an officer to be given an opportunity to be

---

[3] The various units of the Army of the United States are defined in the following sections of the U.S.Code, U.S.Code Annotated: Regular Army, T. 10, Sec. 3; National Guard of the United States, T. 32, Sec. 4b(b); National Guard (State), T. 32, Sec. 4b(a); Organized Reserves, T. 10, Sec. 341; Officers' Reserve Corps, T. 10, Sec. 351, and Enlisted Reserve Corps, T. 10, Sec. 421.

[4] See Army Regulations, No. 600-40, par. 20a, 41a and b. These regulations cover "officers of the National Guard in Federal service" and members of the Officers' Reserve Corps and Organized Reserves.

heard upon the matter of his discharge.[5] In the absence of evidence of irregularity it will be presumed that all conditions necessary to the performance of this official act were fulfilled.[6]

In our opinion, however, the regularity of defendant's discharge is not important. There was testimony by officers of the National Guard Bureau, War Department, that the recognition of a state guard organization as a unit of the National Guard of the state did not automatically adopt its officers or confer on them the status of commissioned officers in the National Guard without application and federal recognition. An examination of the pertinent legislation, Title 32, United States Code, 32 U.S.C.A. and the National Guard Regulations issued by authority of the President pursuant thereto, verifies this testimony, leaving no doubt of appellant's lack of status as a National Guard officer.

Section 4b, Title 32, U. S. Code, 32 U.S. C.A. § 4b, defines the National Guard of the several states as that portion of the organized militia "Federally recognized as provided in this title and organized, armed, and equipped in whole or in part at Federal expense and officered and trained under paragraph 16, section 8, article I of the Constitution".

Section 9 requires that the National Guard of any state include such officers and enlisted men, corresponding to those of the regular army "as may be authorized by the Secretary of War".

Section 17 follows: "The President shall make all necessary rules and regulations and issue such orders as may be necessary for the thorough organization, discipline, and government of the militia provided for in this title."

Section 111 of the same title provides that: "Persons commissioned as officers of the National Guard after June 4, 1920, shall not be recognized as such under any of 'the provisions of this title unless they shall have been selected from the following classes, and shall have taken and subscribed to the oath of office prescribed in section 112 of this title."

Under the authority of Section 17,

supra, National Guard regulations have been issued by the Secretary of War. His acts in this respect, being non-judicial, are the acts of the President.[7] While the appointment of militia officers is a function of the state, paragraph 4 of National Guard Regulations No. 20, titled "Commissioned Officers" provides: "These appointees, however, will not be considered officers of the National Guard in the sense of the National Defense Act until they have been federally recognized."

Paragraph 9, conforming to the U. S. Code, U. S. Code Annotated, requirement, provides that an appointment is not complete until the officer has executed the prescribed oath of office which must be sent "to. the chief of the National Guard Bureau with the officer's request for federal recognition".

Sections 21 and 22 provide for federal recognition, which is defined as "the action of the War Department in acknowledging and recording that officers of the National Guard have met the qualifications and requirements prescribed by the National Defense Act" and is not complete "until granted by the War Department". The precise method of securing federal recognition by a commissioned officer of the National Guard is set out in Section 23, and the basis of action by the chief of the National Guard Bureau on his application is stated. Physical, moral and professional tests which must precede approval are prescribed in Section 25. The scope of the examination is covered by Sections 34–43.

The National Guard Bureau was established as a branch of the War Department by authority of Congress [8] and its records were properly admitted to establish the fact that defendant had not applied for federal recognition, had not taken the oath of office, had not been examined as required, and had not been approved by the chief of the National Guard Bureau. Nor did he claim that any of these steps had been taken. He was, therefore, never an officer of the New York National Guard "within the meaning of the National Defense Act" and did not come within the exception accorded National Guard officers by the proviso to Section 1393.

---

[5] United States ex rel. Creary v. Weeks, 259 U.S. 336, 42 S.Ct. 509, 66 L.Ed. 973.

[6] Lewis v. United States, 279 U.S. 63, 73, 49 S.Ct. 257, 73 L.Ed. 615; Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 96 F.2d 518.

[7] Scott v. Carew, 196 U.S. 100, 25 S.Ct. 193, 49 L.Ed. 403; Northern Pac. R. Co. v. Mitchell, D.C., 208 F. 469.

[8] U.S.Code, Title 32, Sec. 171, 32 U.S. C.A. § 171.

## II.

We are unable to accept defendant's theory that because the uniform he wore was that of the New York National Guard, in that to the complete uniform of a captain of the United States Army the letters "NY" were superimposed on the insignia, he cannot be charged with wearing the "duly prescribed uniform of the United States Army". That letters have been added, so small in size and so placed that they may only be noted by a close observer, does not change the basic fact that it was the uniform, complete in every prescribed detail, the wearing of which is made unlawful. The statute does not forbid wearing the prescribed uniform "without additions or distinguishing marks". The prohibition is absolute.

## III.

The information is not limited to the charge that defendant wore "the duly prescribed uniform of a captain in the United States Army" but in addition "and two 'U. S.' insignias on coat lapels, captain's bars on shoulders." This it charged "against the form of the statute in such case made and provided."

The statute, supra, makes it unlawful to wear the duly prescribed uniform of the U. S. Army "or any distinctive part of such uniform or a uniform any part of which is similar to a distinctive part of the duly prescribed uniform."

We have held that where an information charges several acts, each of which constitutes a violation of a statute, proof of any one violation is sufficient to sustain a judgment of conviction.[9]

It is clear from the testimony of the witnesses, and the uniform worn by defendant, which in its entirety was offered in evidence, that the shoulder bars worn by defendant were those of a captain in the U. S. Army.

Section 25 of Army Regulations 600-35, prescribes the insignia of grade. The eighth item is as follows: "Captain.—Two silver bars each 3/8 inch in width and 1 inch in length. Bars to be 1/4 inch apart."

Insignia defining the rank of an officer is a part of the prescribed army uniform, as much so as the insignia "U. S." over which the controversy chiefly centered. In our opinion a captain's bars conforming to the specifications of army regulations are a distinctive part of that uniform.

In United States v. Krakower, 2 .Cir., 86 F.2d 111, it was held that wearing the prescribed buttons on overalls was a violation of Section 1393. And in a recent case, United States v. Herting, D. C. S. D. Fla., 48 F.Supp. 607, defendant, a second lieutenant of infantry in the Maryland State Guard, was found guilty of a violation of the statute in wearing his uniform as an officer of the state guard, which, the opinion states, was in part similar to a distinctive part of the army uniform. The opinion does not designate the distinctive part involved, but in the report of this case found at page 164, Bull. Judge Advocate General, April, 1943, the case is cited as follows: "Defendant was prosecuted for wearing distinctive parts of the uniform of the United States Army, * * * Held: The gold bars of a second lieutenant are a distinctive part of the uniform of the United States Army."

## IV.

In 1935, defendant on his own representation of his qualifications, became a member of the Reserve Officers' Association. His membership was terminated in 1938 because he was not on the War Department list as a member of the Reserve Corps. Thereafter he joined the U. S. Infantry Association. These facts, with notices received by him from the Office of Organized Reserves, War Department, during the period of his membership in the Reserve Officers' Association were offered by him as admissions or circumstantial evidence of his status as a reserve officer. They were admitted without objection and their weight, if any, was for the jury.

Nothing in the record, other than may be implied from wearing the uniform, indicates that defendant intended to impersonate or represent himself as an officer of the Army. He is seventy-four years of age. His presence at the "canteen" was not for personal gain but to invite service men to a "canteen" conducted by a local church. Under these circumstances the sentence imposed, to serve ninety days and to pay a fine of $150, or to serve an additional ninety days in default of the latter, seems rather severe. But this is a matter wholly within the discretion of the trial

[9] Carpenter v. District of Columbia, Mun.App.D.C., 32 A.2d 251.

judge who, in determining the sentence, has available to him matters not usually incorporated in the record on appeal. The penalty imposed, being within the limits prescribed by law, is not subject to appellate control.

Affirmed.