Richard Glenn KEENE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 6018.

United States Court of Appeals
Tenth Circuit.

April 8, 1959.

William F. Reynard, Denver, Colo. (Albert L. Vogl, and Frank C. Lowe, Denver, Colo., were with him on brief), for appellant.

Lt. Colonel Robert T. Hays, Washington, D. C. (Donald E. Kelley, James C. Perrill, Denver, Colo., and Daniel O. Omer, Washington, D. C., were with him on brief), for appellee.

Before HUXMAN, MURRAH and BREITENSTEIN, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a judgment and sentence on a conviction for refusal to submit to induction into the armed forces in violation of Section 462(a), Title 50 U.S.C.A.Appendix. Foremost, the judgment and sentence are said to be void because the government failed to prove the essential jurisdictional fact that appellant was legally classified I-A as a prerequisite to induction into the armed forces. The precise point is the failure to prove the indispensable factum of a quorum of appellant's draft board when his I-A classification was determined.

There is some authority for saying that the point is not open in this col-

lateral proceedings, but should be raised administratively  See Jessen v. United States, 10 Cir., 242 F.2d 213; Mason v. United States, 9 Cir., 218 F.2d 375; Evans v. United States, 9 Cir., 252 F.2d 509; Prohoroff v. United States, 9 Cir., 259 F.2d 694.  We prefer, however, to treat the matter as going directly to the competency of the board to classify the appellant as an essential ingredient of the offense charged as in Christoffel v. United States, 338 U.S. 84, 69 S.Ct. 1447, 93 L.Ed. 1826.  And see also Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; United States ex rel. McCarthy v. Cook, 3 Cir., 225 F.2d 71.  And, while it is, to be sure, incumbent upon the government to prove a valid classification as an essential element of the offense, the draft board did admittedly have jurisdiction of the registrant, with full authority to classify him in I-A, i. e., available for military service.  Indeed, under the applicable regulations it had no authority to do otherwise in the absence of a showing that he was entitled to some other classification.  See § 1622.10, C.F.R., Title 32; § 1623.2, C.F.R. Title 32.  Having jurisdiction of the person with full power to classify him as it did, we will indulge in the regularity of the board proceedings, i. e., "that all necessary prerequisites to the validity of official action are presumed to have been complied with, and that where the contrary is asserted it must be affirmatively shown." Lewis v. United States, 279 U.S. 63, 49 S.Ct. 257, 260, 73 L.Ed. 615.  See also United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131; Cooper v. United States, 8 Cir., 233 F.2d 821; Facchine v. Hunter, 10 Cir., 190 F.2d 200.

At all times, applicable law provided that "Each local board shall consist of three or more members * * * or separate panels thereof each consisting of three or more members * * *." § 460(b)(3).  See also § 1604.52 C.F.R. Title 32.  And, a majority of the members of the local board or a panel thereof "who are present at any meeting of the panel at which a quorum is present shall decide any question or classification prop-

erly before the panel." § 1604.52a(d), C.F.R. Title 32.

As a part of its proof, the government introduced the appellant's selective service file showing that on April 16, 1952, the appellant was classified I-A by a board vote of 2 to 0 and was so notified; that about four years later, and on November 16, 1956, the board refused to reopen the classification by a vote of 4 to 0; and that about two months later, the board again refused to reopen the classification by a vote of 3 to 0.

The appellant challenges the requisite validity of the classification as resting a presumption of validity upon the presumption of regularity, and asserts that guilt cannot be thus established.  But in any event, the 2 to 0 board vote is said to vitiate any presumption of regularity and validity.  And moreover, the appellant says that such presumption certainly does not overcome the presumption of innocence.

The first flaw in appellant's reasoning lies in the failure to appreciate the significant difference between a mere inference of fact which does not necessarily prove anything, and a legal presumption which imparts prima facie validity to the proceedings of the draft board.  See Wigmore on Evidence, 3rd Ed., Vol. IX, §§ 2490, 2491.  Rule 704 A.L.I. Model Code of Evidence 1942.  The presumption which attends these proceedings is founded in the policy of the law, and is derived from the faith and credit we owe to official acts of duly constituted authority.  As such, it is legally sufficient to sustain the burden of regularity and validity until dissipated by some probative evidence to the contrary.  It is no double presumption to declare as a matter of law that official acts of a lawfully established draft board with jurisdiction of the person are prima facie valid.  Such presumptions are distinguishable from the evidential value of ultimate inferences based upon a "rational connection" between what is proved and what is inferred.  See Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519; Wilson v. United States, 162 U.S. 613, 16

S.Ct. 895, 40 L.Ed. 1090; "The Validity of Statutory Presumptions of Crime under the Federal Constitution", 22 Texas Law Rev. Dec.1943, p. 75–87.

■ Nor can we agree that the recorded 2 to 0 vote of the board is any probative evidence contrary to the presumption. This is so even when considered in connection with subsequent 4 to 0 and 3 to 0 votes, indicating that four years after the first vote, the board consisted of more than three members. There is nothing legally or factually inconsistent in the 2 to 0 vote and a duly constituted board consisting of three members or a panel thereof consisting of the same number, a quorum of which is competent to decide any classification properly before it. Nor are the subsequent votes inconsistent with the presumption of legality of the first board action. It is sufficient, we think, that a quorum of a statutory board was present and voted. The legal consequence is that in the absence of some proof to the contrary, we will presume that the local draft board or panel thereof consisted of three members.

■ Neither do we think the traditional presumption of innocence overcomes the presumption of regularity and validity. Both are founded in the policy of the law as procedural safeguards. British America Assur. Co. of Town of Toronto, Canada v. Bowen, 10 Cir., 134 F.2d 256; United States v. Buckner, 2 Cir., 118 F.2d 468; Reynolds v. United States, 9 Cir., 238 F.2d 460; Wigmore, supra, § 2511. They stand in lieu of fact until overcome by fact; they do not conflict, rather they operate successively to shift the duty of producing evidence at the ultimate risk of nonpersuasion. See Wigmore, supra, § 2493. One operates as an invulnerable cloak of innocence until removed by proof beyond a reasonable doubt; the other operates as a rule of law to sustain the burden of proof and support a finding of guilt. See United States v. Fleischman, 339 U.S. 349, 70 S.Ct. 739, 94 L.Ed. 906. Both thus perform their respective functions in the judicial process of determining guilt or innocence.

■ Though the appellant raised the question of the competency of the board, it offered no proof whatsoever that it was illegally or improperly constituted when it classified him. In this posture of the case, we will indulge in the legality of the board's action. In that respect, this case is clearly distinguishable from Christoffel v. United States, supra, where evidence was adduced tending to show the lack of a quorum of the tribunal which voted the criminal charge.

■ The appellant next contends that the board arbitrarily and erroneously refused to reopen his I-A classification and afford him a special hearing on his conscientious objection as provided by Section 456(j), Title 50 U.S.C.A.Appendix, which expressly provides that "Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation of war in any form. * * * Any person claiming exemption from combatant training and service because of such conscientious objections * * * shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. * * *"

The trial court apparently took the view that the exemption privilege granted by Section 456(j) was subject to and conditioned upon the procedural requirements of Section 1625.2, C.F.R., Title 32, which pertinently provides that "The local board may reopen and consider anew the classification of a registrant (1) upon the written request of the registrant * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252), unless the local board first specifically finds

there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." The court reasoned that since the appellant made no written request to his local board to reopen and reconsider his I-A classification until after induction notice had been mailed to him; and since the board had refused, upon consideration, to find that there had been a change in his status from circumstances over which he had no control, his refusal to submit to induction in accordance with the induction notice was in violation of Section 462(a), Title 50 U.S.C.A.Appendix.

Appellant does not claim to be entitled to any deferred or exempt status when he registered. And see §§ 1622.10, 1623.2, C.F.R., Title 32. But, four years after his registration and I-A classification, and on August 28, 1956, he wrote to the draft board seeking information concerning conscientious objections, stating that he was a pacifist and would directly support an army only if forced to do so. By coincidence, on the same day his letter was mailed, his local board mailed to him an order to report for induction on September 13, 1956. On August 30, the Clerk of his local draft board answered appellant's inquiry, stating that inasmuch as the appellant did not claim conscientious objector classification prior to the date the order for induction was mailed, the order to report for induction on September 13 would stand in effect. But there is nothing to show that the local board took any official action on his letter.

Three days before the appellant was to report for induction on September 13, at his request, he was transferred for induction from his local board at La Porte, Indiana, to a Denver local board, and upon such transfer was ordered to report for induction on October 15 instead of September 13. On the specified date, appellant reported but refused to be inducted. At the same time he submitted a written statement to the effect that he was conscientiously opposed to war, but would accept service in a hospital or similar institution if required to do so. Pursuant to the administrative rules, appellant's complete selective service file was then forwarded to appropriate state and national headquarters for review. In reply to the state headquarters, the General Counsel for the national headquarters called attention to Regulation 1625.2 and directed the state headquarters to determine whether the local board had actually considered the registrant's letter received on August 30, and if not, it should do so to determine whether it contained any evidence of a change in status resulting from circumstances over which the registrant had no control; if not, he should then be given a new date to report for induction, and that the outstanding order to report would remain in full force and effect, thus affording the registrant another opportunity to comply therewith.

Upon return of the appellant's file to his local board, and on November 19, the board formally considered appellant's letter of August 28, and refused to reopen the classification. Three days later, and on November 21, the appellant wrote the local board, asking that he be sent Form 150—a special form for conscientious objectors. On November 23, the Secretary of the local board informed the appellant that his August 28 letter had been formally considered and that the information presented therein "was not evidence of a change in status resulting from circumstances over which you had no control." On the same date, the local board Secretary mailed an order to the appellant, requiring him to report on December 6, 1956, and also enclosing SSS Form 150, which the appellant completed and returned to the board on November 29, with a covering letter stating that he understood his classification would be reopened when this form was received. On referral of the letter and Form 150 to the state headquarters, the local board was directed to consider the information contained in the Form 150, along with other material in the appellant's file, and to determine whether the additional information was sufficient evidence of a change in his status resulting from circumstances

over which he had no control. And, the local board's attention was again invited to Regulation 1625.2, and also to Regulation 1625.4, relating to procedure upon refusal to reopen and consider the registrant's classification. Thereafter and on January 7, 1957, the local board considered the Form 150 and refused to reopen the classification, and the appellant was so notified in accordance with Regulation 1625.4.

The order of November 23 requiring the appellant to report for induction in La Porte, Indiana, on December 6, was transferred to the local board in Denver, and appellant was ordered to report for induction there on January 21. The appellant's file was again referred to the state headquarters on consideration of which the local board was advised that the file was then in such condition as to support a prosecution in the event the registrant failed to submit to induction as ordered by the Board. On January 18, before he was to report on the 21st, he mailed the local board in La Porte a letter requesting an appeal from the board's decision of January 8 denying conscientious objector classification by refusal to reopen the original classification. Personal appearance was also requested with suspension of the induction order until final determination. On January 21, appellant reported but refused to be inducted because of "my conscientious objection to military duty." This prosecution followed.

Treating the registrant's letter of August 28 as a "written request" to reopen the original classification, Regulation 1625.2 forbids reopening since the request came after his induction notice had been mailed, and the board had refused to find a change of status due to a change of conscience. But even so, appellant insists that the cut-off provisions in Regulation 1625.2 must yield to the overriding command of the statute (§ 456 (j), supra).

There is respectable and plausible support at the trial level for construing the statute to vouchsafe a hearing before the local board on his claim to a conscientious objector classification at any time before induction, and if such claim is not sustained, to an appeal and special hearing as provided by Section 456(j), supra. See United States v. Clark, D.C., 105 F. Supp. 613; United States v. Crawford, D.C., 119 F.Supp. 729; United States v. Brown, D.C., 129 F.Supp. 237; United States v. Underwood, D.C., 151 F.Supp. 874. On the other hand, the weight of authority favors the application of Regulation 1625.2 to the claims of conscientious objectors, the effect of which is to foreclose consideration of the claim or request made after the mailing of the induction notice in the absence of a specific finding of a change in status beyond the control of the registrant. Feuer v. United States, 9 Cir., 208 F.2d 719; United States v. Schoebel, 7 Cir., 201 F.2d 31; Lemien v. United States, 5 Cir., 158 F.2d 550; United States v. Bartelt, 7 Cir., 200 F.2d 385; Townsend v. Zimmerman, 6 Cir., 237 F.2d 376.

■■ Concededly, no one has a constitutional right to exemption from military service. It is a matter of legislative grace. It is granted in recognition of the concept that it is "more essential to respect a man's religious belief than to force him to serve in the armed forces." Williams v. United States, 5 Cir., 216 F.2d 350, 352. At the same time, we recognize the necessity of safeguarding the fountainhead of these ideals by force of arms. For the plainest of reasons it is therefore incumbent upon one claiming to be conscientiously opposed to participation in war to prove the bona fides of his claims, and the Congress provided the procedure for the determination of these subjective beliefs. But it also recognized the necessity for leaving the administrative details to the executive branch of the government by expressly authorizing the President to "prescribe the necessary rules and regulations to carry out the provisions of this title." § 460(b)(1), Title 50 U.S.C.A.Appendix. See Bradshaw v. United States, 10 Cir., 242 F.2d 180; United States v. Palmer, 3 Cir., 223 F.2d 893.

It does not seem unreasonable or derogatory to the spirit and purpose of the exempting statute to provide by regulation

that no request for reopening and reclassification shall be entertained after notice to report for induction is mailed. Otherwise, the whole machinery of the selective service process may conceivably be disrupted by last minute changes in status for purposes of avoidance. Such is the manifest purpose of the proviso in Regulation 1625.2. We think the Regulations have application to a conscientious objector's claim as all other claims for a change in status. It seems also entirely consistent with the procedural safeguards provided in the selective service process to say that the circumstances relied upon to show a change in status must have occurred after the induction notice was mailed. Regulation 1625.1(b) provides that "Each classified registrant * * * shall, within ten days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a different classification such as, but not limited to, any change in his occupational, marital, military or dependency status, or in his physical condition." While the Regulation does not specifically enumerate a change in status due to change of conscience, it is not limited to the examples contained therein, and we do not think it inconsistent with the privilege of exemption to require the registrant to report the facts upon which he relies to the board within ten days after he becomes convinced of religious beliefs which would entitle him to exemption. Regulation 1625.3(a) and (b) provides the only circumstances under which the local board shall reopen and consider anew the classification of a registrant after order to report for induction. And, conscientious objection is not one of the grounds.

Our question then is narrowed to whether the appellant is entitled to have his classification reopened and considered anew on the grounds of a change of status due to circumstances beyond his control. This is to say, a change of status due to a change of conscience occurring after the notice to report was mailed. If such change did occur, the board erroneously refused to reopen and

review, and an appeal lies therefrom by force of the statute, although no provision in the Regulations is made therefor.

■ From the registrant's letter of August 28, and from the whole record, it is unmistakably plain that the registrant's change in status due to a change in conscience did not occur after the induction notice was mailed. Indeed, the letter of August 28 emphatically stated that he was a "pacifist in civilian life and would directly support an army only if forced to do so." In May 1956, before the induction order in August, and at the time of his physical examination, he indicated that he was conscientiously opposed to war, and "1-A-O" was noted on a form sheet used in his physical examination. But it did not amount to an oral or written request for change in classification. As the trial court observed, he consulted a university professor concerning his conscientious beliefs in June, and was then advised to consult an attorney. But although he was near a local draft board, he was not constrained to make inquiry concerning his conscientious objector status until August, or until on the very same day the induction order was mailed. There was no formal application for conscientious objector status until after his refusal to submit to the induction order. In these circumstances, we agree with the trial court that the board was justified in its refusal to reopen his classification.

■ The appellant also makes the further contention that his conviction is void because the order to report on September 13, upon which it is based, was superseded by subsequent orders and became moot. But the subsequent orders were merely postponements of the original order and provided that the original order should remain in effect. They were entered in accordance with Regulation 1632.2(d) for the convenience of the registrant and to provide for all procedural safeguards. The postponements did not invalidate an outstanding order for induction. The contention is wholly without merit.

The judgment is affirmed.