**UNITED STATES of America,**
**Plaintiff,**

v.

**Henry B. BONGA, Jr., Defendant.**

**Crim. No. 38605.**

United States District Court
E. D. Michigan, S. D.

Jan. 29, 1962.

Paul J. Komives, Asst. U. S. Atty., Detroit, Mich., for the United States.

Harold E. Leithauser, Detroit, Mich., for defendant.

McCREE, District Judge.

Defendant was tried by the court, sitting without a jury, upon an indictment charging:

"That on or about April 12, 1960, in the Eastern District of Michigan, Southern Division, Henry B. Bonga, Jr., after having been duly and regularly ordered to report for induction by Local Board No. 102, Plymouth, Michigan, did report for induction at the Fort Wayne Induction Station, 6301 West Jefferson Avenue, Detroit, Michigan, but wilfully and knowingly refused to submit to induction in accordance with Section 1632.14(b) of Selective Service Rules and Regulations of 1948; in violation of Section 462(a), Title 50, USC, Appendix."

The government's proofs consisted of defendant's Selective Service file, which was received in evidence by stipulation of counsel. Defendant rested without introducing evidence, and moved for a judgment of acquittal.

The Selective Service file discloses the following sequence of events.

*January 28, 1958:* Classification questionnaire mailed to defendant.

*February 8, 1958:* Defendant's completed questionnaire received by local board.

*September 10, 1958:* Defendant classified I–A.

*January 13, 1959:* Order to report for physical examination mailed to defendant.

*January 26, 1959:* Defendant given physical examination and found to be acceptable.

*March 28, 1960:* Order to report for induction on April 12, 1960, mailed to defendant.

*April 12, 1960:* Defendant reported for induction at the appointed time and place, but refused to submit to induction by taking the required step forward.

*April 13, 1960:* Induction officer's report on defendant's refusal to be inducted sent to United States Attorney.

*May 18, 1960:* Letter from state selective service headquarters to local board recommending that defendant be directed to appear before the board for questioning regarding the basis for his refusal to be inducted, and that he be invited to submit a written statement of the reasons for his actions.

*June 2, 1960:* Letter from local board to defendant requesting his appearance

on June 8, 1960; notation that he failed to appear on that date.

*June 24, 1960:* Letter from local board to state headquarters advising that defendant had failed to report for the interview on June 8th, but had informed the board on June 10th that because of a change of address he had just received the letter notifying him of the interview.

*July 7, 1960:* Letter from local board to defendant requesting his appearance on July 13th.

*July 13, 1960:* Defendant's interview with board, the minutes of which are set forth in the margin.[1]

*July 22, 1960:* Defendant's written statement received by board.[2]

1. Chrmn. Mr. Bonga we understand that when you reported for induction on April 12, 1960 you refused to step forward and be sworn into the Army. Why did you refuse?

   Reg. I have been studying the Bible and I now object to going into service as it is against the teaching of Christ Jesus.

   Chrmn. When did you start studying the Bible?

   Reg. I started going to church in December, 1958, and continued to go during 1959 and this year.

   Chrmn. What church do you attend?

   Reg. The Kingdom Hall church in Plymouth.

   Chrmn. Do you work?

   Reg. Yes.

   Chrmn. Where?

   Reg. At the Detroit Race Track in Livonia.

   Chrmn. What do you do there, what kind of work and how many hours do you work?

   Reg. I work in the restaurant about 40 to 48 hours a week.

   Chrmn. What kind of work did you do before that?

   Reg. I worked at the Convair [Corvair] Plant at Willow Run.

   Chrmn. When did you take your physical examination for military service?

   Reg. I think it was the first part of 1959.

   Chrmn. When did you get your induction notice?

   Reg. About the first part of April.

   Chrmn. You were classified in 1–A in September, 1958, you made no complaint about your classification. You were ordered to take your physical examination in January, 1959, you still made no complaint about your 1–A classification.

   Reg. In 1959 I wasn't sure what I wanted to do.

   Chrmn. Who told you not to step forward at the induction station and take the service oath?

   Reg. Myself.

   Chrmn. Are you now studying for the ministry?

   Reg. Yes.

   Chrmn. When were you ordained?

   Reg. In May, 1959.

   Chrmn. Do you have proof of your ordaination?

   Reg. No, I didn't bring my baptism slip with me.

   Chrmn. Do you have a certificate of ordaination?

   Reg. No.

   Chrmn. Do you regularly preach from a pulpit?

   Reg. No, I give talks at the church.

   Chrmn. Are you the head minister?

   Reg. No, I'm the congregation publisher.

   Chrmn. What church do you belong to?

   Reg. I'm a member of the Kingdom Hall at Plymouth.

   Chrmn. Is your objection carrying a rifle?

   Reg. I object to any part of the service.

   Chrmn. Will you accept work in an institution?

   Reg. No.

   Chrmn. What is a Congregation publisher?

   Reg. One who has to put in time doing field work calling door to door preaching the Bible and giving out literature.

   Chrmn. How many hours a week do you do this work?

   Reg. I have no set number of hours.

   Chrmn. We want you to write out a statement in your own handwriting why you refuse to be inducted and bring this statement to this board before our next meeting which will be August 10th. We will adjourn this until then.

2. DEAR BOARD MEMBERS:
   I AM WRITING IN ANSWER TO YOUR REQUEST OF ME TO GIVE

*November 21, 1960:* Letter from state headquarters to local board recommending that board "officially consider all of the new and additional information which this individual has submitted and make a determination as to whether or not this

YOU A FULL & COMPLETE ANSWER ON MY REFUSAL TO ENTER THE ARMED FORCES OR TO TAKE PART IN ANY WORK PERTAINING TO THE ARMED FORCES.

I AM INDEED HAPPY TO DO THIS AS THE BIBLE GIVES RE-ASSURANCE FOR DOING SO IN THE 1ST BOOK OF PETER 3:15. THE SCRIPTURE SPEAKS OF A HOPE & IT IS THIS HOPE I HAVE THAT COMPELS MY REASONING & ACTION, IN THE SIGHT OF JEHOVAH GOD, TO REFUSE TO PARTICIPATE IN THE ARMED FORCES OR TO BE ANY PART THEIRIN [SIC].

I SHALL START AT THE VERY BEGINNING IN MY EXPLANATION:

WHEN JEHOVAH GOD PUT MAN ON THE EARTH HE GAVE THEM A COMMAND AT GENESIS 1:28 AND ALSO AT GENESIS 2:15. IT WAS JEHOVAH'S PURPOSE THAT ADAM & EVE START THE HUMAN RACE IN A CONDITION OF PERFECTION & AS THIS RACE MULTIPLIED AND GREW IN NUMBERS, THEY WOULD MAKE THE GARDEN OF EDEN BIGGER & BIGGER UNTIL EVENTUALLY THE WHOLE EARTH WOULD BECOME A PERFECT PARADISE. IN TIME THE EARTH WOULD BE FILLED ABUNDANTLY WITH PEACEFUL, PERFECT HUMANS LIVING TOGETHER, SHOWING LOVE ONE TOWARD THE OTHER, & RIGHTEOUSLY WORSHIPPING AND OBEYING GOD AS THEIR RULER.

JEHOVAH GOD PROVIDED ADAM THE FREEDOM TO GO IN A GOOD OR A BAD WAY. HE GAVE ADAM ANOTHER COMMAND AT GENESIS 2: 16, 17. IT WAS A SIMPLE TEST OF WHETHER OR NOT ADAM WOULD BE TRUE & FAITHFUL TO JEHOVAH GOD. ADAM FAILED & HIS PUNISHMENT IS TOLD TO US AT GENESIS 3: 22–24. ADAM & EVE LOST THEIR PERFECTION SO THEIR CHILDREN MUST BE BORN IN AN IMPERFECT CONDITION. HE LOST FOR HIMSELF, AND FOR THE HUMAN SOULS THAT WOULD COME AFTER HIM, PERFECTION, ETERNAL LIFE & THE PARADISE OF EDEN.

THE CONDITION WE ARE IN TODAY IS TOLD TO US AT ROMANS 5:12. THE ONLY HOPE OF GETTING BACK WHAT ADAM & EVE LOST THRU AN ACT OF UNDE-SERVED KINDNESS BY JEHOVAH GOD. THAT ACT WAS THE BRINGING TO EARTH OF HIS SON, CHRIST JESUS & THE DEATH OF HIS SON FOR OUR REDEMPTION. ONE OF THE TWO EVILDOERS WHO WERE FASTENED TO STAKES TO DIE AT THE SAME TIME AS JESUS SAW THAT JESUS HAD DONE NOTHING WRONG & HE ASKED JESUS TO REMEMBER HIM WHEN JESUS CAME INTO HIS KINGDOM. JESUS PROMISED HIM THAT HE WOULD DO THIS AT LUKE 23: 43, "YOU WILL BE WITH ME IN PARADISE." JESUS WAS REWARDED FOR HIS FAITHFULLNESS EVEN TO "DEATH ON A TORTURE STAKE." JEHOVAH EXALTED HIM TO A SUPERIOR POSITION IN THE HEAVENS & HE RAISED HIM SO THAT HE WOULD RESTORE PARADISE & THAT HE WOULD UPHOLD GOD'S RULERSHIP BY DESTROYING ALL THE WICKED IN GOD'S DUE TIME. JESUS WOULD DO THESE THINGS AT THE TIME OF GOD'S KINGDOM.

JESUS TOLD US TO PRAY THAT JEHOVAH'S KINGDOM WOULD COME TO THIS VERY EARTH WE ARE LIVING ON & THAT JEHOVAH'S WILL WOULD BE DONE RIGHT HERE ON EARTH AT MATT. 6: 9, 10. THIS KINGDOM WILL MAKE POSSIBLE THE DOING OF GOD'S WILL ON THE EARTH AS BROUGHT OUT IN DANIEL 2:44.

WHEN JEHOVAH'S KINGDOM IS ON THE EARTH & HIS WILL IS BEING DONE, EVERY FORM OF WAREFARE AND HATE THAT EXISTS AMONG MEN SUCH AS WE SEE IN THE EARTH TODAY, WILL END. THIS IS CLEARLY BROUGHT OUT TO EVERYONE AT ISAIAH 2:4 OR MICAH 4:3. WHEN THIS CONDITION IS ON THE EARTH THERE WILL BE ONLY PERFECT, HAPPY AND PEACEFUL PEOPLE, DOING GOD'S WILL INTO ETERNITY. THESE WONDERFUL, PARADISIAC CONDITIONS CAN BE FOUND AT THE FOLLOWING SCRIPTURES: ISAIAH 9:7, ISAIH 11: 6–9, ISAIAH 33:24, ISAIAH 65: 17, 21–25, PSALM 37: 9–11, MATT. 5:5, 2 PETER 3:15, & REV. 21: 3–5.

THROUGH A CHAIN OF EVENTS TAKEN FROM BIBLE PROPHECY THE HEAVENLY KINGDOM OF GOD

new and additional information would justify a change in his Selective Service classification."

*December 28, 1960:* Letter from local board to defendant: "At the board meeting of December 14, 1960 the contents of your Selective Service file were reviewed and considered by the board to determine if you were eligible for a lower classification and it was the opinion of the board

WAS SET UP WITH CHRIST JESUS AS ITS RULER IN THE YEAR 1914.

REV. 12: 7–12 TELLS US HOW WAR BROKE OUT IN HEAVEN AND CHRIST JESUS CAST SATAN DOWN & NOW HE HAS BUT A SHORT PERIOD OF TIME. DURING THIS SHORT PERIOD OF TIME "THE GOOD NEWS OF THE KINGDOM" MUST BE PREACHED. THIS WE ARE COMMANDED TO DO AT MATT. 24:14. JEHOVAH'S WITNESSES KNOW THAT THE DEVIL'S WORLD HAS BUT A SHORT TIME LEFT SO WE MUST TELL OTHERS ABOUT THE BIRTH OF GOD'S KINGDOM.

MATT. CHAPT. 24, MARK CHAPT. 13 & LUKE CHAPT. 21 GIVE US A VIVID DESCRIPTION ABOUT THE SIGNS OF THE "TIME OF THE END". THERE IS NO DOUBT WE ARE IN THE TIME OF THE END WHEN SATANS WORLD WILL BE DESTROYED. THE ACCOMPLISHED END DRAWS NEAR AND SOON GODS PEOPLE WILL BE ABLE TO LIVE IN THAT REGAINED PARADISE THAT HE PROMISED US.

CHRIST JESUS TOLD HIS APOSTLES TO "PREACH, SAYING THE KINGDOM OF THE HEAVENS HAS DRAWN NEAR" AT MATT. 10:7. LIKEWISE, CHRIST JESUS IS OUR EXAMPLE TO FOLLOW IN HIS FOOTSTEPS IN EVERYTHING, ESPECIALLY IN PREACHING THE "GOOD NEWS OF THE KINGDOM" AT MATT. 24:14. JESUS TELLS US THAT HE WAS SENT TO PREACH THE TRUTH AT LUKE 4:43. JOHN 17:16 TELLS US HOW JESUS' FOLLOWERS ARE TO BE NO PART OF THE WORLD. THE POWER OF THE TRUTH SANCTIFIES THOSE THAT ACCEPT & ADHERE TO IT. HIS (JESUS) ADHERENCE SANCTIFIED HIMSLF. THAT IS WHY HE WAS NEVER A PART OF THE WORLD. JAMES 4:4, & 1 JOHN 2:15 TELL US THE CONSEQUENCES OF BEING A PART OF THE WORLD. THE WORLD IS CONTROLED BY SATAN THE DEVIL AS BROUGHT OUT IN THE FOLLOWING SCRIPTURES: MATT. 4:8, 9, 2 COR. 4:4, 1 JOHN 5:19, & PSALM 96:5. THAT THE WORLDS THINKING IS OUT OF HARMONY WITH JEHOVAH IS SHOWN TO US IN 1 COR. 1:20–28, 1 COR. 2; 6–8, 12, & 1 COR. 3: 18, 19.

I, AS ONE OF JEHOVAH'S WITNESSES, CANNOT BE A PART OF THIS WORLD AS EVIDENCED AT JOHN 15:19 & JOHN 17:16. WE SHOW NO ENMITY TOWARD THE GOVERNMENTS OR ANYONE IN THE WORLD—1 TIM. 2: 1–4 BEARS THIS OUT. FOLLOWING THE EXAMPLE OF JESUS WE REMAIN NEUTRAL, NOT INTERFERING WITH WORLDLY CONFLICTS OR POLITICS. 2 TIM. 2: 3, 4, JOHN 18:16,. & 1 TIM. 5:22 GIVE MY REASONS.

2 COR. 5:20 & EPHESIANS 6:19, 20 TELLS US ABOUT OUR STATUS AS CHRIST'S AMBASSADORS & IT IS OUR REQUIREMENT THAT WE PREACH THE KINGDOM GOOD NEWS TAKEN FROM MATT. 6:33 & MATT. 28:19.

EPHESIANS 6:12 TELLS ME THAT WE ARE NOT IN A FIGHT AGAINST THE GOVERNMENTS OF THE WORLD BUT RATHER AGAINST THE SPIRIT FORCES IN THE HEAVENS.

THE TWO GREATEST COMMANDMENTS THAT THE WHOLE LAW HINGES UPON ARE FOUND AT MATT. 22: 36–40. "THOU SHALT LOVE THE LORD GOD WITH ALL THY HEART, AND WITH ALL THY SOUL, AND WITH ALL THY MIND. THOU SHALT LOVE THY NEIGHBOR AS THYSELF."

MY CONSCIENCE RESPECTS & FEARS JEHOVAH GOD & I AM GOING TO "LOVE MY NEIGHBOR" AND IT WOULD BE IMPOSSIBLE FOR ME TO BE A PART OF SOMETHING THAT WOULD COMPEL ME TO DO LIKEWISE IN THE ROLE OF A SOLDIER OF WARRING GOVERNMENTS (OR ANY GOV'T. THAT STANDS FOR WAR OR ARMS) RATHER THAN A SOLDIER OF GOD.

MY LIFE, WORSHIP & ALLEGIENCE BELONG ONLY TO JEHOVAH GOD & I BASE THIS STATEMENT ON SCRIPTURES AT MATT. 22:21, LUKE 4:8, ISAIAH 8:13 & LUKE 12: 4, 5. PSALM 83:18 TELLS ME THAT "JEHOVAH IS THE MOST HIGH OVER ALL THE EARTH." I AM GOING TO DO AS ACTS 5:29

that it did not warrant the reopening of your classification."

Indictment and prosecution next followed:

In support of his motion for acquittal, defendant relies upon the last part of the Selective Service regulation dealing with opening of classifications, 32 C.F.R. § 1625.2. This regulation, with the pertinent portion italicized, provides as follows:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; *provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status re-*

*sulting from circumstances over which the registrant had no control."*

Defendant contends that after the Order to Report for Induction had been mailed, there occurred a change in his status resulting from circumstances over which he had no control—viz., the maturation of conscientious opposition to any form of service in the armed forces. He further argues that the local board acted capriciously and arbitrarily in declining to reopen his I–A classification, inasmuch as the information which he furnished at his interview on July 13, 1960, and in his written statement of July 22, 1960, on its face warranted a reclassification of I–O,[3] and not being traversed, *required* such reclassification. And if defendant's classification had been reopened—whatever the ultimate reclassification—the induction order upon which this prosecution is founded would have been cancelled.[4]

For reasons hereinafter stated, the court cannot accept these contentions.

It is well established that exemption from military service is a matter of legislative grace. Being a privilege and not an inherent right, it has been held that a claim for exemption "may be abandoned by the holder like any other personal privilege." United States v. Schoebel, 201 F.2d 31, 32 (7th Cir. 1953). Accord: Boyd v. United States, 269 F.2d 607 (9th Cir. 1959); Keene v. United States, 266 F.2d 378 (10th Cir. 1959).

The privilege of exemption is not self-asserting. It is the obligation of the registrant to apprise his local board *in timely fashion* of his claim and of the facts in support thereof. While 32 C.F.R. § 1625.1 expressly recognizes that "[n]o

SAYS & "OBEY GOD AS RULER RATHER THAN MAN." IT IS THROUGH THIS WAY ONLY THAT EVERLASTING LIFE ON HIS BEAUTIFUL, REGAINED PARADISE EARTH IS POSSIBLE.
Sincerely yours,
HENRY B. BONGA, JR.

3. 32 C.F.R. § 1622.14: "(a) In Class I–O shall be placed every registrant who

would have been classified in Class I–A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces."

4. 32 C.F.R. § 1625.14.

classification is permanent", it requires a registrant to report, within ten days of its occurrence, any fact which might alter his classification.

Regulation 1625.2, quoted above, prescribes a reasonable and orderly procedure for re-evaluating classifications in light of new or additional information. It specifically forbids a reopening of classification after an induction order has been mailed, except where an involuntary change of status has occurred.

Defendant would have the court construe this regulation to mean that a local board must consider a change-of-status claim interposed weeks after the registrant has refused induction. Such an interpretation could plunge the system of induction into chaos.

■ Assuming, without deciding, that a bona fide change of conscience could constitute an involuntary change of status within the meaning of Regulation 1625.2,[5] the regulation certainly contemplates prompt notification to the board as a necessary condition for reopening and reclassification. Just as a board is justified in refusing to reopen a classification when the request comes after notice of induction and is based upon a change of status antedating the notice, Keene v. United States, 266 F.2d 378 (10th Cir. 1959), so the board is justified in declining to reopen a classification upon a request made after the registrant has refused to submit to induction. United States v. Monroe, 150 F.Supp. 785 (S.D.Cal.1957).[6]

The record in the instant case shows that at no time prior to his refusal to be inducted did defendant claim to be a conscientious objector or advise the local board of any change in his status. There is no indication that at the time he refused induction defendant attempted to explain his action. Nor did he thereafter make any effort to contact his board. On July 13, 1960, three months after he had refused to submit to induction, *and in response to the board's invitation,* defendant appeared and for the first time stated that his religious convictions precluded any form of military service.

In addition, there is nothing in the record which indicates that defendant ever requested reclassification to I–O. In fact, when the chairman of the local board asked "Will you accept work in an institution?" defendant replied "No." Even the written statement which defendant submitted to the board does not contain a request for reclassification.

Thus it appears that the board was acting on its own initiative in considering whether to reopen defendant's classification following his refusal to be inducted. Moreover, on the basis of defendant's own information, it cannot be said with assurance that his change of conscience took place in the interval between the mailing of the induction notice (March 28, 1960) and the day set for induction (April 12, 1960). Therefore, even if defendant had presented his information to the board before the day for induction, it does not appear that he made out a prima facie case for reclassification based upon a change of status developing after March 28, 1960. Cf. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed.2d 132 (1953); United States v. Brown, 129 F.Supp. 237 (D.N.J.1955); United States v. Williams, D.Conn.1954, Crim. No. 8917 (unreported opinion).

I therefore reach the following conclusions:

1. Defendant was lawfully classified I–A and ordered to report for induction.

2. Defendant committed the offense charged by refusing to submit to induction under a valid order on April 12, 1960.

---

5. Compare United States v. Schoebel, 201 F.2d 31, 33 (7th Cir. 1953) ("strained interpretation" to include change of conscience within the regulation) with United States v. Brown, 129 F.Supp. 237, 239 (D.N.J.1955) ("naive" to say that change of conscience would fall outside the regulation).

6. Contra: United States v. Underwood, 151 F.Supp. 874 (E.D.Pa.1955), a decision which the Ninth Circuit Court of Appeals has characterized as representing "an erroneous view of the law". See Boyd v. United States, 269 F.2d 607, 612 (9th Cir. 1959).

3. Any claim for exemption by reason of defendant's religious scruples was waived by his failure to assert the same in the time and manner prescribed by the Selective Service regulations.

4. The local Selective Service board was not required to entertain a claim for exemption first advanced after defendant refused induction.

5. The local board, in any event, did not act arbitrarily in declining to reopen defendant's classification on the basis of the information adduced by him, since such information did not prima facie establish a change in status resulting from circumstances beyond defendant's control occurring between the mailing of the order to report for induction and the time scheduled for induction.

I find the defendant guilty as charged, and the matter is referred to the probation department for pre-sentence investigation and report.