**Ralph Trent SORENSON**

v.

**Lt. Robert B. WILLIAMS, Commanding Officer, United States Army Examination Station and Induction Center, 401 North Broad Street, Philadelphia, Pennsylvania.**

Misc. No. 2398.

United States District Court
E. D. Pennsylvania.
May 18, 1962.

Fred C. Aldridge, Jr., Philadelphia, Pa., for petitioner.

Drew J. T. O'Keefe, U. S. Atty., Mabel G. Turner, Asst. U. S. Atty., Philadelphia, Pa., for respondent.

JOHN W. LORD, Jr., District Judge.

Petitioner claims that he has been illegally inducted into the armed forces of the United States. He asks this Court to declare that the order under which he was inducted was invalid and void, and to order his release from the United States Army.

The facts have been stipulated and—with the omission of exhibits—are set out below.

STIPULATION

"1. Petitioner is an individual residing at 800 Lafayette Road, Bryn Mawr, Pennsylvania.

"2. Prior to July, 1961, petitioner's legal residence was Burlington, Iowa, where he was registered with Local Board No. 13–29 of the Selective Service System pursuant to the Universal Military Training and Service Act.

"3. Prior to January of 1962, petitioner was classified in the following classifications by Local Board No. 13–29 on the following dates:

| | |
|---|---|
| October 4, 1954 | I–A |
| September 13, 1955 | II–S |
| August 20, 1956 | II–S |
| June 2, 1958 | I–A |
| September 15, 1958 | I–A |
| February 12, 1959 | I–S–C |
| August 10, 1959 | II–S |
| May 17, 1960 | II–A |
| until February 1961 | |
| February 6, 1961 | I–A |
| October 12, 1961 | I–A |
| December 19, 1961 | I–A |
| by Appeal Board | |

"On each of the above occasions, petitioner was duly notified by Local Board No. 13–29 of the classification in which he had been placed.

"4. By telegram sent on January 8, 1962, and by letter mailed on January 8, 1962 and received on January 11, 1962, petitioner notified Local Board No. 13–29 that he was a Conscientious Objector and requested that he be sent SSS Form No. 150 (Special Form for Conscientious Objector).

"5. On January 10, 1962, Local Board No. 13–29 mailed petitioner SSS Form No. 150, which petitioner received on January 12, 1962.

"6. By letter dated January 11, 1962 [Exhibit A] Local Board No. 13–29 notified petitioner that the information contained in his telegram of January 8, 1962, to the effect that he is a Conscientious Objector, was considered by them at their meeting on January 10, 1962, and that they felt a change in his classification was not justified since his file contained information that he had previously attempted to enlist in the Armed Services. They also stated that, on these grounds, they declined to re-open and consider his case.

"7. On January 15, 1962, Local Board No. 13–29 mailed to petitioner Order to Report for Induction on February 6, 1962.

"8. On January 16, 1962, petitioner mailed completed SSS Form No. 150 to Local Board No. 13–29 together with a letter notifying Local Board No. 13–29 that he appealed their decision and requesting that his classification be reopened and that he be given the classification of I–O. He also requested that he be permitted to appear personally to justify his claim as a Conscientious Objector [Exhibit B]. By letter of the same date, plaintiff advised Col. Glen R. Bowles, Iowa State Director of Selective Service, of the situation and requested that he advise Local Board No. 13–29 of the proper procedural steps to be followed in the matter.

"9. On January 17, 1962, petitioner received the Order to Report for Induction which had been mailed by Local Board No. 13–29 on Janu-

ary 15, 1962. By letters of January 17, 1962, petitioner notified Local Board No. 13–29 and Col. Glen R. Bowles that he believed the Order to be illegal, demanded its cancellation, reinstated his demand for a hearing and reiterated his appeal of the decision of Local Board 13–29.

"10. By letter dated January 22, 1962 [Exhibit C], Col. Glen R. Bowles wrote petitioner that the actions of Local Board No. 13–29 were in accord with the Selective Service Regulations and advised him to report for induction as ordered.

"11. By letter dated January 30, 1962, Local Board No. 13–29 advised petitioner that they had considered SSS Form No. 150 and his subsequent correspondence and concluded that reopening of his classification was not warranted [Exhibit D]. By his letters of February 3, 1962, petitioner advised Local Board No. 13–29 and Col. Glen R. Bowles that he appealed the decision of the Local Board.

"12. By letter of February 5, 1962 [Exhibit E], Local Board No. 13–29 advised petitioner that he did not have any right of appeal. By letter dated February 6, 1962 [Exhibit F], Col. Glen R. Bowles advised petitioner that he found no justification for further action.

"13. Having been transferred at his own request from Local Board No. 13–29 in Burlington, Iowa to Local Board No. 107 in Bryn Mawr, Pennsylvania for delivery to an induction station, petitioner received Order for Transferred Man to Report for Induction [Exhibit G] requiring him to report to Local Board No. 107 for induction at 6:30 A.M. on February 27, 1962.

"14. On February 20, 1962, petitioner instituted suit in the United States District Court for the Eastern District of Pennsylvania, Civil Action No. 31032 [Sorenson v. Selective Service System, 203 F.Supp.

786], seeking an injunction to restrain certain Selective Service officials from enforcing the Order to Report for Induction on February 27, 1962. By opinion dated April 6, 1962, the Honorable John W. Lord, Jr., J., dismissed petitioner's Complaint for want of jurisdiction.

"15. By letter dated April 13, 1962, Local Board No. 107 ordered petitioner to report in Bryn Mawr, Pennsylvania, for induction at 6:40 A.M. on April 23, 1962 [Exhibit H].

"16. By letter dated April 17, 1962, Local Board No. 13–29 ordered petitioner to report in Burlington, Iowa, for induction at 8:00 A.M. on April 23, 1962 [Exhibit I].

"17. Petitioner reported to Local Board No. 107 on April 23, 1962 as ordered and was transported from Local Board No. 107 in Bryn Mawr, Pennsylvania to the United States Army Examination Station and Induction Center, 401 North Broad Street, Philadelphia, Pennsylvania for induction.

"18. Defendant, Lt. Robert B. Williams, is the Commanding Officer in charge of said Center, and had charge of and was in custody of petitioner at the time of issuance and service of the Writ herein issued.

"19. Immediately prior to submitting to induction petitioner handed an Army officer at the Induction Center a letter dated April 23, 1962 addressed to Lt. Robert B. Williams [Exhibit J].

"20. After the delivery of said letter, petitioner submitted to induction into the U. S. Army at 3:08 P.M. on April 23, 1962 by answering the roll call, taking one step forward as requested, and taking the following oath:

" 'I, Ralph Trent Sorenson, do solemnly swear that I will bear true faith and allegiance to the United States of America; that I will serve them honestly and faithfully against all their enemies whomsoever; and

that I will obey the orders of the President of the United States and the officers appointed over me, according to regulations and the Uniform Code of Military Justice.'

"21. Immediately thereafter, petitioner's attorneys filed a petition for Writ of Habeas Corpus, Miscellaneous Action No. 2398, in the United States District Court for the Eastern District of Pennsylvania.

"22. At 3:35 P.M. on April 23, 1962, the Honorable John W. Lord, Jr., District Judge ordered the issuance of a Writ of Habeas Corpus which Writ was served on the defendant in whose custody the petitioner was at approximately 4:00 P.M. on the same day. Petitioner was released on his recognizance pursuant to the Writ."

After examination of the petition, the stipulation and exhibits, briefs and other supporting documents, and after hearing oral argument on May 3, 1962, this Court is of opinion that petitioner is not entitled to the relief which he seeks.

The opinion of this Court in Civil Action No. 31032 (see Par. 14, Stipulation) dealt with certain of the legal principles presently involved, and in that connection said:

"Section 1625.4 of the Selective Service Regulations provides that a local board may refuse to reopen a registrant's classification when it finds that such facts would not result in a change of classification. 32 C.F.R. § 1625. On the other hand, there is a statutory provision which provides a special kind of appeal in the conscientious objector cases. 50 U.S.C.A.App. § 456(j); See Witmer v. United States, 348 U.S. 375, 376–377, 75 S.Ct. 392, 99 L.Ed. 428 (1954). When a registrant comes within the provisions of that statute, his privilege cannot be defeated by a procedural regulation such as Selective Service Regulation § 1625.4. United States v. Underwood, 151 F.Supp. 874, 876 (E.D. Pa.1955).

"When there is no apparent substance to the late-coming claim of conscientious objection, however, a local board's action in refusing to reopen is not arbitrary or capricious. United States v. Wilson, 132 F.Supp. 485, 492 (W.D.La.1955); United States v. Schoebel, 201 F.2d 31, 32 (7th Cir., 1953). There is nothing in the cases to show that the mere request for a form 150, on the eve of induction, automatically invokes the special statutory review. Keene v. United States, 266 F.2d 378, cases collected p. 383 (10th Cir., 1959)."

The rare cases in which Local Board action in refusing to reopen has been overridden by a Court of the United States are discussed in the same Opinion, No. 31032. In such cases there has at least been a strong showing of merit on behalf of the registrant in addition to circumstances throwing doubt on the regularity of the Local Board's action.

The present case contains no such elements. Petitioner's position seems sterile and technical in the extreme. For instance, he had been classified I–A as early as October 4, 1954. Thereafter he was given numerous student and occupational deferments, as shown in paragraph 3 of the Stipulation (hereafter abbreviated as ST.) In the Form 150 (ST. ¶8, Exhibit B) in answer to Series II, Question 6, he wrote:

" * * * It was a mistake not to apply for this position [classification] two or so years ago when my beliefs were finally solidified. I imagined that I could avoid the necessity of compromising myself through participation in military service, by obtaining justifiable deferments on the basis of my educational and occupational statuses. I had been given the advice to apply for such position only as a last resort, so as to avoid the red-tape and abuse. I recognize now that this

was bad advice; much could have been saved by an earlier application. I also recognize that my record is not on the surface compatible with a CO position, in that I did publicly entertain serving in the Armed Forces. My approaches to the Navy and Air Force were never taken in earnestness. I was always certain that the services would not accept me as an officer (which seemed necessary if I were to serve in a capacity to utilize my education and training), due to my physical condition. * * *"

Although there is more to the same effect, the foregoing should suffice to demonstrate the distinctly unappealing character of petitioner's representations.

The next element of the case is by no means controlling, but is a circumstantial element derogating from the likelihood that petitioner has at all times acted in candor and good faith. It is a matter of judicial notice that a registrant who has reached age 26 may be ordered to report for induction only after extraordinary governmental action. Petitioner was born on February 21, 1936 which means that he reached age 26 on February 21, 1962. His latest classification is shown as December 19, 1961 I–A by Appeal Board." (ST. ¶3). It was on January 8, 1962 that he first notified his Local Board that he was a Conscientious Objector, which first notice they received by telegram. Thus they received his Form 150, explaining his conscientious objections, on January 18, 1962—although he had entertained such scruples for several years according to the statement from the Form 150 quoted heretofore.

The law applicable to the present situation has recently been summarized in a slightly different context in United States v. Bonga, 201 F.Supp. 908, 913 (E.D.Mich.1962):

"It is well established that exemption from military service is a matter of legislative grace. Being a privilege and not an inherent right, it has been held that a claim for exemption 'may be abandoned by the holder like any other personal privilege.' United States v. Schoebel, 201 F.2d 31, 32 (7th Cir. 1953). Accord: Boyd v. United States, 269 F. 2d 607 (9th Cir. 1959); Keene v. United States, 266 F.2d 378 (10th Cir. 1959).

"The privilege of exemption is not self-asserting. It is the obligation of the registrant to apprise his local board *in timely fashion* of his claim and of the facts in support thereof. While 32 C.F.R. § 1625.1 expressly recognizes that '[n]o classification is permanent', it requires a registrant to report, within ten days of its occurrence, any fact which might alter his classification.

"Regulation 1625.2, quoted above, prescribes a reasonable and orderly procedure for re-evaluating classifications in light of new or additional information. It specifically forbids a reopening of classification after an induction order has been mailed, except where an involuntary change of status has occurred."

██ It is certainly the law that the exemption-seeker must carry the burden of demonstrating his good faith. Keene v. United States, 266 F.2d 378, 383 (10th Cir. 1959). As to the element of good faith, the courts have never displayed sympathy with one who withholds his claim or objection in order to speculate upon an outcome. Yet the petitioner by his own admission has done just that. He says that he formed his conscientious objections several years ago, but waited to see whether it would be necessary to assert them. Such delay was in violation of the holdings of many cases as well as the requirements of simple good faith.

His attempts to enlist in "the Navy and Air Force were never taken in earnestness," he told his Local Board. "I was always certain that the services would not accept me as an officer * * * due to my physical condition. * * *"

The record does not throw light on his physical condition. No deficiency in that

connection, as to the requirements for Induction on April 23, 1962, is apparent (ST. ¶20).

Since it is not the function of this Court to act as a review board, the showing made in the petitioner's Form 150 and supporting letters has been examined only for the purpose of determining whether the Local Board action was without basis. In that respect it is noted that in 1948 the Congress amended the Universal Military Training and Service Act to add a clarifying provision to the section concerning exemption for conscientious objections, 50 U.S.C.A.Appendix, § 456(j):

" * * * Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

It appears to this Court that a finding that petitioner had not made a prima facie showing of conscientious objector status (i. e. a change of status sufficient to warrant reopening) cannot be characterized as arbitrary or capricious. To the contrary, the conclusion can fairly be drawn from this record that petitioner's scruples were based on "philosophical views or a merely personal moral code" —expressly excluded by the quoted amendment to the Act—rather than the specified "religious training and belief."

For all the foregoing reasons it is the opinion of this Court that Local Board No. 13–29 did not act contrary to law in declining to reopen (as described in paragraphs 6 through 12 of the Stipulation) the petitioner's classification; and that the order under which he was inducted into the United States Army on April 23, 1962 was not invalid.

It is therefore the ruling of this Court that the Writ of Habeas Corpus issued by this Court on April 23, 1962 be dismissed and it is SO ORDERED.