**Paul Luther BLEGEN, Petitioner,**

v.

**COMMANDING OFFICER, FORT LEON-ARD WOOD, MISSOURI, Respondent.**

**Civ. A. No. 17872-3.**

United States District Court,
W. D. Missouri, W. D.

March 26, 1970.

See also, D.C., 342 F.Supp. 163.

Paul Blegen, pro se.

Vernon A. Poschel, Asst. U. S. Atty., Kansas City, Mo., for respondent.

## ORDER DENYING PETITION FOR HABEAS CORPUS

WILLIAM H. BECKER, Chief Judge.

Petitioner, a former prisoner in the United States Medical Center for Federal Prisoners as a result of his conviction of failure to report for induction into the Armed Forces, was recently inducted into the United States Army at his own request, after being paroled from his sentence under Executive Order 11325, U.S. Code Cong. & Admin. News 1967, p. 3458, for that purpose. Petitioner has now, however, petitioned this Court for a writ of habeas corpus, claiming his induction was illegal and praying his immediate release from the custody of the respondent. Leave to proceed in forma pauperis has been previously granted.

In spite of his claimed (by the respondent) lack of standing [1] to contest the validity of an induction which he himself sought under the provisions of Executive Order 11325 (which provides for the parole for purposes of voluntary

1. In this case, where petitioner has exhausted all of his appeals in the Selective Service System, has been convicted of failure to report for induction and has only sought induction thereafter by seeking parole under an Executive Order for that purpose, he probably has standing to challenge in habeas corpus his reclassification by the Local Board and the order to report for induction. The cases cited by respondent on this point, Pickens v. Cox (C.A. 10) 282 F.2d 784; Boyd v. United States (C.A. 9) 269 F.2d 607; and United States v. Bonga (E.D.Mich.) 201 F.Supp. 908, generally involve waiver of exemption by failure to exhaust remedies or other like behavior and are not persuasive in the case at bar. Further, *Boyd* and *Bonga* involved exemptions professed after the order to report for induction. They may not be viable currently in the light of recent decisions.

induction of persons convicted of offenses of failure to report for induction), petitioner nevertheless challenges the validity of his initial classification as I–A by his Local Board and the resulting induction order on the following grounds: (1) that his reclassification from I–D to I–A upon being certified by the Marine Reserve as having served unsatisfactorily by missing more than 10% of the annual drills was "without any basis-in-fact" in that he was late for, not absent from, one of the meetings which was counted as an absence; (2) that his induction under Selective Service Regulation 1631.8 was invalid because such regulation requires that he be inducted, as petitioner asserts, "no later than the next monthly call-up" after his unsatisfactory participation certification (which he states was made on July 10, 1966) and his induction was stayed while he pursued his appeals in the Selective Service System and in the courts; (3) that Regulation 1631.8 (32 CFR § 1631.8) "strictly forbids reclassification from Reserve Status to I–A"; (4) that petitioner was ordered to report for induction when he was 27 years of age, which is past the lawful induction age, according to petitioner; (5) that his custody by respondent is unlawful because petitioner is a vegetarian; (6) that he has not yet been discharged from the Marine Corps Reserve and therefore is unlawfully on active duty in the Army; and (7) that, if forced to remain in the Army, he should be transferred to Wheaton, Illinois, so that he can be closer to his business and legal activities. Contentions (1), (2) and (3) were fully considered and determined adversely to petitioner by the United States Court of Appeals for the Seventh Circuit on petitioner's original appeal from his conviction for failure to report for induction. See United States v. Blegen (C.A. 7) 407 F.2d 767. Although any collateral attack on his conviction would not be cognizable in habeas corpus in this Court but rather in a § 2255, Title 28, U.S.C., motion to vacate sentence in the sentencing court, petitioner is, technically speaking, challenging his custody by the Army under the original induction order in this case. Therefore, habeas corpus is a proper means to assert his claim for relief. If the factual and legal claims are the same as in the case decided by the Seventh Circuit Court of Appeals, this Court would be warranted in deferring to the findings of the Seventh Circuit, in the absence of exceptional circumstances not present in this case. Since the factual and legal contentions in that case may have differed from those in this case, however, the show cause order of this Court issued on December 12, 1969. After several extensions of time, respondent's complete response was filed on February 13, 1970, and petitioner's traverse was filed on March 6, 1970. Viewing the allegations of the petition, response and traverse in the light most favorable to petitioner, it appears that he missed two drills in June and July 1966 and was tardy in reporting to a third drill prior to the Marine Reserve Corps' taking measures to enforce his satisfactory participation (by ordering further duties) on July 10, 1966. Petitioner contends that this does not exceed his 10% quota which is permitted by regulation. It is readily apparent, however, that the Marine Reserve Corps authorities were justified in taking enforcement measures to induce satisfactory participation on the basis of two absences and one tardiness. An unsatisfactory participation notice was received by petitioner's Local Board on July 21, 1966. In United States v. Blegen, *supra,* on the same facts, the Seventh Circuit Court of Appeals found after a full hearing in the trial court that petitioner had missed more drills than his quota. Furthermore, according to the record, petitioner was not the subject of an unsatisfactory participation certificate in which he was certified for priority induction until after he had failed to report as ordered for 5 days active duty on August 29, 1966. Petitioner's contentions, viewed in the light of the record most favorable to him, are therefore without merit.

■ Second. Petitioner states that, in order for his induction order to have been lawful, he should have been ordered to report for induction at the "next monthly call-up" rather than having such order stayed, as it was, until he exhausted his appeals in the Selective Service System and in the courts. This contention has no support in law or reason. United States v. Blegen, *supra*. The stay in induction was for petitioner's benefit in order that he might pursue his appeals. It does not follow that his induction should thereby be invalidated. This contention is therefore determined adversely to petitioner.

■ Third. Petitioner's contention that Selective Service Regulation 1631.8 "strictly forbids" reclassification from Reserve Status to I–A is without support, either in statute, regulation or in judicial decision. Petitioner argues that reclassification and order for induction under Regulation 1631.8 are inconsistent because the Regulation requires that he be required to be "forwarded for induction at the next time the local board is forwarding other registrants for induction or at any prior time." But this argument is unsound, as stated above in the second point.

■ Fourth. Petitioner contends that he was called for induction and ordered to report for induction after he was 27 years of age and that this is beyond the age limit within which he is liable to be drafted under the applicable law. However, Section 6(h) of the Universal Military Training Act (Section 456(h) (2), Title 50 App., U.S.C.,) provides for the extended liability of deferred registrants, including those deferred for the purpose of enlisting in a reserve component of the Armed Forces, until age 35. Petitioner is and was within the age group liable for induction and was properly inducted in that case.

■ Fifth. Petitioner asserts that his custody is unlawful because he is a vegetarian and he cannot therefore be sufficiently nourished by Army food to maintain his health at a satisfactory level. In his final response to the show cause order, respondent states that petitioner has not exhausted his administrative remedies with respect to this contention because "he may submit his situation to his commanding officer for whatever appropriate relief deemed necessary." In his traverse, petitioner states that he:

> "has indeed exhausted every reasonable remedy. On December 3, 1969 he spoke with his commanding officer, Lt. Johnson, and was referred to the Department of Psychiatry (Mental Hygiene) to Specialist Gross, who said he could (would?) do nothing about the diet."

If a vegetarian can secure release on the claimed ground, the quoted statement falls far short of showing inability to secure administrative relief. It does not appear that petitioner's being a vegetarian is of itself a bar to his military service. Further, it does not appear that the diet offered petitioner by the Army constitutes such cruel and unusual treatment requiring a grant of extraordinary relief. Until petitioner himself deems the situation serious enough to make realistic applications through proper channels for relief, a court should not intervene. Petitioner, however, is apparently more interested in a release from service rather than any relief from the conditions of his service in this respect. Petitioner does not state or show the exceptional circumstances or the violation of a federally protected right which would warrant intervention by a court in the internal discipline, control and treatment of its members by the Army.

■ Sixth. Petitioner contends that he cannot now lawfully be on active duty in the Army when he is still a member of the Marine Corps Reserve. This is a highly technical argument, based upon no federal statutory or constitutional

provision.[2] In point of his federally-protected rights, petitioner does not state any violation in this regard. The dual membership does not figure to force petitioner to suffer any deprivations nor will it prolong his ordinary term of service. Further, reserve membership in one branch of the Armed Forces and active membership in another do not appear to be logically inconsistent. Respondent, in his final response, notes that the Judge Advocate General of the Army has described the duties of the two obligations as being "not incompatible" in two opinions. JAGA 1960/3883 dated April 26, 1960; JAGA 1965/4229 dated June 22, 1965. But those opinions are not relied on for the conclusion in this case that the kind of dual membership violates no federally protected right. Rather, the basis of the decision here is that no federal statutory or constitutional provision can be cited of which this is a violation. This case is unlike dual membership in active components of two branches of the military service, which may impose conflicting duties. The dual membership here does not impose conflicting duties or any other obligation in excess of that imposed by the Military Service Act.

 Seventh. As an alternative to release from the Army, petitioner wishes to be transferred to a base close to Wheaton, Illinois, to be close to his business and legal activities. The services, however, have elaborate procedures by which petitioner may make successive applications for a transfer on the theory of hardship. Otherwise, petitioner does not state in this petition any exigency of such an exceptional nature that it would require the intervention of this Court into a matter of the Army's internal management and control. Neither does he state the violation of any federally protected right in this respect.

All of petitioner's contentions are therefore without merit and do not warrant relief in habeas corpus.

---

2. The applicable federal statutes are §§ 1162 and 1163 of Title 10, United States Code. Section 1162 provides that "Subject to other provisions of this title, reserve commissioned officers may be discharged at the pleasure of the President. Other Reserves *may* be discharged under regulations prescribed by the Secretary concerned." (Emphasis added) Army Regulations 140–178 currently provide that a reservist will be discharged "as of the day preceding enlistment or induction" (although, as may be the case with petitioner, the discharge is usually not accomplished until some time after induction). It appears that these Army Regulations might conflict with Selective Service Regulations which require that a registrant reservist who is inducted for unsatisfactory participation be in fact a member of the Reserve on the day of his induction. Insofar as the regulations are consistent, they are not violated in this case. Petitioner, when awarded his discharge, may be awarded the discharge "as of" the date prior to his induction. Further, Army Regulation 140–178 is consistent insofar as it requires that:

"Discharge to enter another military status . . . . does not relieve the obligated individual of the remainder of any obligation incurred under any provision of law at the time of initial entry into military service."

Further, the discretionary language in respect of reserve discharges in Section 1162, *supra*, is not violated by failure or refusal to discharge under the conditions noted in this case.