## LEWIS ET AL. *v.* UNITED STATES.

No. 182. Argued December 3, 4, 1928.—Decided March 5, 1929.

*Mr. R. L. Davidson,* with whom *Messrs. W. I. Williams* and *Finis E. Riddle* were on the brief, for petitioners.

*Solicitor General Mitchell,* with whom *Assistant Attorney General Luhring* and *Mr. Harry S. Ridgely* were on the brief, for the United States.

MR. JUSTICE SANFORD delivered the opinion of the Court.

In 1925 the petitioners were indicted in the District Court for the Eastern District of Oklahoma for violations of the National Banking Laws alleged to have been committed in 1923 at Tulsa, in Tulsa County, Oklahoma. Motions to quash and dismiss the indictment on the grounds that the court was without jurisdiction of the prosecution and that the grand jury had not been legally constituted, and to quash the petit jury panel, were overruled. The petitioners were tried, convicted and sentenced. The judgment was affirmed by the Circuit Court of Appeals. 22 F. (2d) 760; 26 F. (2d) 465. And the cause is here for limited review. 278 U. S. 587.

The contentions of the petitioners are, in substance: that the District Court had no jurisdiction, because when the indictment was returned and when the case was tried, Tulsa County, in which it was alleged the offenses had been committed, was not within the territorial limits of the district; and that the grand and petit juries were not legally constituted because drawn from a jury box from which the names of all persons from Tulsa and certain other counties had been removed.

Under § 101 of the Judicial Code, enacted in 1911, Oklahoma was divided into two judicial districts:—the Eastern, embracing Tulsa and thirty-nine other counties; and the Western, the remaining counties in the State.

In 1924—the two judges of the Eastern District not having agreed upon the division of business and assignment of cases for trial—the senior circuit judge, pursuant to § 23 of the Judicial Code, made an order assigning the holding of sessions of the grand jury and the receiving of indictments, etc., for the entire district,[1] and all other judicial business arising in or coming from certain designated counties to the senior district judge, and all other judicial business in or from the remaining counties, including Tulsa County, to the junior district judge, and assigning the Tulsa County cases for hearing and trial at Tulsa unless otherwise ordered by that judge.

By an Act of February 16, 1925,[2] § 101 of the Judicial Code was amended so as to divide Oklahoma into three judicial districts: the Northern, Eastern, and Western. The Northern District embraced ten counties, including Tulsa County, which previously had been in the Eastern

---

[1] The reason for this, as stated in the order, was that the offices and records of the marshal and district attorney were at Muskogee [a court town in Muskogee County], and it had been the practice to hold there the sessions of the grand jury for the entire district.

[2] 43 Stat. 945, c. 233.

District, and two counties formerly in the Western District. The Eastern District embraced the remaining thirty counties which previously had been in that district. The senior judge of the Eastern District was assigned to that District; and the junior judge, to the Northern District. Terms of court for the Eastern District, were to be held at Muskogee, Ardmore and three other court towns, as before, and at two other places instead of Tulsa and another court town which were placed in the Northern District. And the clerk, in addition to keeping his office at Muskogee, as before, was also required to maintain an office in charge of a deputy at Ardmore. No other change was made in the court for the Eastern District. By § 5 of the Act it was further provided that:

" The jurisdiction and authority of the courts and officers of the . . eastern district of Oklahoma as heretofore divided between them by the order of the senior judge of the Circuit Court of Appeals . . over the territory embraced within said northern district of Oklahoma shall continue as heretofore until the organization of the district court of said northern district, and thereupon shall cease and determine save and except . . as to the authority expressly conferred by law on said courts, judges or officers, or any of them, to commence and proceed with the prosecution of crimes and offenses committed therein prior to the establishment of the said northern district, and save and except as to any other authority expressly reserved to them or any of them under any law applicable in the case of the creation or change of the . . districts of district courts of the United States."

This last reference, it is plain, covered the general provision in § 59 of the Judicial Code that: " Whenever any new district . . has been or shall be established, or any county or territory has been or shall be transferred from one district . . to another district . . , prosecutions for crimes and offenses committed within such district, . .

county, or territory prior to such transfer, shall be commenced and proceeded with the same as if such new district . . had not been created, or such county or territory had not been transferred, unless the court, upon the application of the defendant, shall order the cause to be removed to the new district . . for trial." [3]

The Northern District was organized on April 1, 1925. Thereupon, as provided by the Act of 1925, the divisional order of the circuit judge as to the Eastern District ceased to be operative; and the court of the Eastern District continued to function without any reorganization under the senior district judge.

On April 7 the clerk and jury commissioner of the Eastern District removed from the jury box from which the grand and petit jurors were drawn, the names of all persons from the ten counties that had been transferred to the Northern District. Nearly two months thereafter the senior district judge, presiding in the Eastern District, made an order for the drawing of the names of grand jurors for a term to be held at Muskogee. This was one of the court towns of the Eastern District both under § 101 of the Judicial Code and the amendment of 1925, and the town at which it had been the practice to hold sessions of the grand jury for the entire district.[4] In consequence of the previous removal of the names of persons from the ten transferred counties, the grand jury, as drawn in pursuance of the judge's order, contained no persons from any of these counties. The indictment was returned in June, 1925, at Muskogee.

After the return of the indictment the fact that the names of all persons from the ten transferred counties

---

[3] At the hearing of the motion to dismiss the indictment counsel for the petitioners, in answer to a question from the court, stated that it was not their purpose to claim the right to be tried in the Northern District.

[4] See note 1, *supra*.

had been removed from the jury box was called to the attention of the judge by the motion to quash and dismiss the indictment and the evidence offered in support thereof, on which he ruled in July. Thereafter, in December, 1925, nearly eight months after these names had been removed, he made an order directing that petit jurors be drawn from the jury box for a term of court to be held at Ardmore—another one of the court towns in the Eastern District under both § 101 of the Judicial Code and the amendment of 1925. The petit jury drawn in obedience to this order likewise contained no persons from any of the transferred counties. The trial was had at Ardmore in January, 1926, before a district judge of Kansas, sitting by assignment, and the petit jury.

1. The contention that the District Court was without jurisdiction in this case rests, in substance, upon the argument that the petitioners were not indicted and tried in the court for the old Eastern District that had jurisdiction in Tulsa County, but in the separate court created by the Act of 1925 for the new Eastern District that was not the same court as that of the old Eastern District and had jurisdiction in only thirty of the forty original counties.

This, we think, is untenable. Rightly construed, the Act of 1925—as shown especially by the specific provisions of § 5, including the reference to § 59 of the Judicial Code—did not create a new court for a new district, but merely amended § 101 of the Judicial Code by limiting the territorial jurisdiction of the court for the Eastern District, for most purposes, to certain counties, while continuing its original territorial jurisdiction for the purpose of commencing and continuing prosecutions for crimes and offenses previously committed therein. In short, the identity of the court was not changed; and it continued to be, as it had been before, the court of the Eastern District. Aside from the transfer of one of the judges, its officers continued as before, retained the custody of its records,

and were charged with the same duties. And while its territorial jurisdiction was reduced for most purposes, this was not changed for the prosecution of past offenses, but for that purpose remained as before—that is, as defined and ascertained by § 101 of the Judicial Code. Compare *United States* v. *Hackett* (C. C.), 29 Fed. 848, 849; *United States* v. *Benson* (C. C.), 31 Fed. 896, 898, in which the opinion was delivered by Mr. Justice Field as circuit justice; *In re Benson* (C. C.), 58 Fed. 962, 963; *In re Mason* (C. C.), 85 Fed. 145, 148; *Mizell* v. *Beard* (D. C.), 25 F. (2d) 324, 325.

We are further of opinion that the Act of 1925 did not contemplate that the court for the Eastern District, sitting in a dual capacity as the court for both the original and the restricted district, should be reorganized and divided into two distinct tribunals—one for the original the other for the restricted district—but that it was intended that, sitting as one and the same court, it should from time to time exercise either its original or restricted territorial jurisdiction, as occasion might require. Here, the indictment—which was entitled in the District Court for the Eastern District of Oklahoma and alleged specifically that the offenses had been committed in 1923 at Tulsa, " in said district, and within the jurisdiction of this court "—was, plainly, sufficient to invoke the exercise of its jurisdiction as the court for the Eastern District sitting for the commencement and conduct of prosecutions of offenses committed prior to the amendment of 1925 within the territorial limits of the district as originally constituted.

We therefore conclude that the petitioners were both indicted and tried in the court for the Eastern District, sitting as the court for the entire original district, including the counties that had been transferred to the Northern District after the offenses were committed. This was in accord with § 5 of the Act of 1925 and § 59 of the Judicial Code. And, as this district had been ascertained by § 101

of the Judicial Code before the offenses had been committed, there was no violation of the provision of the Sixth Amendment granting an accused person the right to a trial by a "jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."

2. Since the court for the Eastern District was sitting *pro hac vice* as one for the entire district as originally constituted, it had authority for the purposes of the prosecution and trial to draw and summon jurors from the entire district, including the ten transferred counties. See *United States* v. *Hackett, supra,* 849. It was not necessary, however, that this be done. The Sixth Amendment does not require that the accused be tried by jurors drawn from the entire district. *Ruthenberg* v. *United States,* 245 U. S. 480, 482, and cases cited. Section 277 of the Judicial Code provides that "Jurors shall be returned from such parts of the district from time to time, as the court shall direct, so as to be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly burden the citizens of any part of the district with such service."

In the situation in which the court would deal occasionally with past offenses in which jurors from the ten transferred counties would be eligible, but ordinarily with cases in which jurors from such counties would not be eligible, the judge might well have thought that it would be most favorable to impartial trials and avoid unnecessary expense or undue burden to the citizens of these ten counties to return only jurors from the thirty other counties—who would be eligible to service in all cases. The evidence, it is true, does not affirmatively disclose that he gave any such direction or required the names of the persons from the ten counties to be removed from the box; nor does it affirmatively show the contrary. But since the names of these persons had been removed

almost two months before he made the order to draw the grand jurors—he did not direct those names to be restored to the box—and his attention had been called to the removal of these names before making the order to draw the petit jurors from the box—it fairly may be inferred that he had either directed that the names be removed or approved the removal before making the orders for drawing the jurors.

And even if it can be regarded as essential, under § 277 of the Judicial Code, that the judge should have given written direction to draw the jurors from part of the district only, still, as the contrary is not expressly shown, such a direction may be taken as sufficiently established by the presumption of regularity. See *Steers* v. *United States* (C. C. A.), 192 Fed. 1, 4. It is the settled general rule that all necessary prerequisites to the validity of official action are presumed to have been complied with, and that where the contrary is asserted it must be affirmatively shown. *Nofire* v. *United States,* 164 U. S. 657, 660; *United States* v. *Royer,* 268 U. S. 394, 398; and cases cited.

We find that the District Court had jurisdiction of the case; that the constitution of the grand and petit juries was not illegal; and that there was no invasion of the petitioners' rights under the Sixth Amendment. The judgment is

*Affirmed.*