**UNITED STATES of America**
**v.**
**Thomas J. N. BELLMER, Appellant.**
**No. 17172.**

United States Court of Appeals
Third Circuit.

Argued Sept. 26, 1968.

Decided Nov. 21, 1968.

Herman Adlerstein, New York City, for appellant.

Elliot Scher, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

## OPINION OF THE COURT

Before BIGGS, FREEDMAN and VAN DUSEN, Circuit Judges.

FREEDMAN, Circuit Judge:

Defendant was convicted and sentenced to imprisonment for three years for refusing to submit to induction into the armed forces, in violation of 50 U.S. C. App. § 462, after his claim for conscientious objector classification was refused and he was classified I-A.

█ The scope of our review of a criminal conviction such as this is limited to the decision whether there has been a denial of basic procedural fairness or whether there is any basis in fact for the draft board's classification. United States v. Spiro, 384 F.2d 159, 161 (3 Cir.), cert. denied, 390 U.S. 956,

88 S.Ct. 1028, 19 L.Ed.2d 1151 (1967), and cases there cited.

It is abundantly clear from the record that there was adequate basis in fact for the draft board's conclusion, and the only substantial question in the case is whether there was a denial of basic procedural fairness. This in turn presents the factual question whether defendant's letter of reply to the report and recommendation of the Department of Justice that his conscientious objector claim should be denied was before the State Director of Selective Service when he refused defendant's request for an appeal to the President.

It is clear from the record that defendant, who had been classified II-S, lost his student deferment when he was dismissed from college for academic failure. Shortly before this he had requested and filed a special Selective Service questionnaire for conscientious objectors. His local draft board reclassified him I-A, and later after a personal hearing declined to reopen the classification. On his appeal the State Appeal Board tentatively denied his request for conscientious objector classification and in accordance with the then relevant requirements referred his claim to the Department of Justice for its recommendation after an "inquiry and hearing * * * with respect to the character and good faith of the objections". 50 U.S.C. App. § 456(j).[1]

The Department of Justice prepared a "resume of the inqury" to which defendant filed a written response. Thereafter, following a hearing at which defendant appeared, the Department of Justice recommended denial of his request for classification as a conscientious objector and transmitted its recommendation together with the resume and defendant's response to it to the State Appeal Board, which received the documents on August 10, 1966. The State Appeal Board then mailed to the defendant a copy of the recommendation of the Department of Justice. The applicable regulations required this to be done in

---

1. See also, 32 C.F.R. § 1626.25(d) (1967).

order to afford defendant an opportunity to file a written reply, and required the State Appeal Board, after considering defendant's reply, to place it in his file.[2] Defendant made his reply by a letter of September 8, 1966, addressed to the State Appeal Board. It is on the later whereabouts of this letter that this appeal turns. The State Appeal Board accepted the recommendation of the Department of Justice and on September 29, 1966, classified defendant I-A. Under the regulations, because the decision of the State Appeal Board was unanimous, defendant could obtain further review only on request for an appeal by the State Director to the President.[3] Defendant made this request by a letter to his local draft board. Pursuant thereto, the local draft board on October 11, 1966, transmitted defendant's file to the State Selective Service Headquarters for review. On October 13, 1966 the State Director advised defendant that he would not appeal.

■ The basis of a conscientious objector classification under the statute is that one "by reason of religious training and belief, is conscientiously opposed to participating in war in any form." 50 U.S.C. App. § 456(j). The ultimate question in cases of this kind, therefore, is the sincerity of the registrant in his claimed belief, a purely subjective question in which objective facts are relevant only to the extent that they supply help in its decision. Witmer v. United States, 348 U.S. 375, 396, 75 S.Ct. 392, 99 L.Ed. 428 (1955). See also United States v. Corliss, 280 F.2d 808, 810, 814 (2 Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960). It fol-

lows that a registrant's reply to the recommendation of the Department of Justice ordinarily is an important element in determining the sincerity of his claim. Yet it is conceded that defendant's reply was not in his file at the time of the trial. This was admitted by the assistant clerk of the local board who was called as the government's witness and was confirmed when the government's counsel presented the letter as a separate item on demand by defendant's counsel for its production.

■ There is, of course, a presumption of the regularity of the conduct of official business.[4] Here, however, the absence of the letter from the defendant's file and its independent possession by the government's counsel raises the problem whether it had ever been present in his file and where it was when the government's counsel secured it. Since neither side introduced any evidence on where the letter was at the time the State Director reviewed defendant's file, we attempted at the argument to cut through the obscurity in the record. We were informed by the government's counsel that before the trial defense counsel had called his attention to the fact that the letter was not in the defendant's file and that at some unspecified time prior to trial the government's counsel had made inquiry and obtained the letter from the State Appeal Board.

It is clearly proven and undisputed that the reply letter dated September 8, 1966, was received by the State Appeal Board on September 13, 1966,[5] prior to the State Director's decision against an appeal to the President. The record in-

---

2. 32 C.F.R. § 1626.25(e) (1967). See also Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955).

3. See 32 C.F.R. § 1627.1(a) (1967). Defendant's further request for an appeal to the President by the National Director of Selective Service is secondary to the problem before us and therefore requires no discussion.

4. United States v. Chemical Foundation, Inc., 272 U.S. 1, 14–15, 47 S.Ct. 1, 71

L.Ed. 131 (1926); Lewis v. United States, 279 U.S. 63, 73, 49 S.Ct. 257, 73 L.Ed. 615 (1929); Keene v. United States, 266 F.2d 378, 380 (10 Cir. 1959); IX Wigmore, Evidence, § 2534 (3d ed. 1940).

5. The letter bears a stamp dated September 13, 1966 reading: "Received, State Headquarters Selective Service". From the file it appears that the stamp was used for mail received by both the State Director and the State Appeal Board.

dicates that the practice of the local draft board was to note on the file minute sheet the receipt of all correspondence and documents. Following this practice it made a notation on the file minute sheet of its receipt of defendant's file from the State Appeal Board and of the addition to the file of the letter from the Department of Justice, but it made no mention of defendant's reply letter of September 8, 1966. Shortly thereafter the local draft board transmitted defendant's file to the State Selective Service Headquarters for a decision by the State Director whether to intervene on defendant's behalf by an appeal to the President.

The inference may readily be drawn that if defendant's reply had been added to the file a notation would have been made in the minute sheet when the local board received it from the State Appeal Board, as was done with the report and recommendation of the Department of Justice. From this, and from the admitted fact that the government's counsel procured the reply prior to trial from the State Appeal Board and not from defendant's file there is enough to permit the inference that the reply was not in defendant's file on the crucial date when the State Director refused to take the appeal to the President.

█ In these circumstances the force of the presumption of regularity of the Selective Service proceedings is met and neutralized by facts which indicate the contrary. Although defendant had the burden of establishing a lack of basic procedural fairness, once he introduced evidence which cast doubt on whether his reply was before the State Director, the government which was seeking to prove his guilt beyond a reasonable doubt had at least the burden to go forward with evidence that the State Director had the reply before him at the time he made his decision. Instead the trial judge ruled that the government had no such burden.

█ Since the government did not carry its burden of proving that defendant's reply letter was before the State Director at the time he made his decision against an appeal to the President, it follows that the record presents a conviction based on a classification procedure which would lack basic procedural fairness if defendant's reply letter contained any substantial matter which the State Director should have had before him.[6] We must therefore consider the nature and significance of defendant's reply to the report and recommendations of the Department of Justice.

The recommendation of the Justice Department is based on the report of its hearing officer. He found that defendant's beliefs were not those of a true conscientious objector and that they were not sincerely held. He noted that defendant had not indicated any unwillingness to bear arms in defense of the United States when he completed a Selective Service questionnaire in November, 1963, and when he filed a petition for naturalization on February 10, 1964, although he had begun listening in May, 1963 to broadcasts of the Radio Church of God, with which he claimed religious identification. The hearing officer also pointed out that in the three years during which defendant had been listening to the Radio Church of God he had paid no tithes, had not become a member of the church and had developed only a superficial knowledge of its doctrines. The hearing officer concluded that defendant's claim for conscientious objector status was more a convenience than a sincere belief. In support of this he pointed to the coincidence that defendant made his request for conscientious objector forms only six weeks before his academic failure, when he must have realized that the loss of his student

---

6. Proof of prejudice is essential to a successful claim of denial of basic procedural fairness. United States v. Spiro, 384 F.2d 159, 161 (3 Cir.), cert. denied, 390 U.S. 956, 88 S.Ct. 1028, 19 L.Ed.2d 1151 (1967); United States v. Sturgis, 342 F.2d 328, 331 (3 Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120 (1965).

classification was imminent. The hearing officer reported that defendant had said that men in the military service commit a sin and that he was indifferent to the need to care for wounded soldiers.

It is to these statements in the hearing officer's report that defendant's reply letter was directed. Defendant pointed out that he did not say it was wrong to aid a wounded soldier, but rather that he could not participate in the medical corps because this would make him a part of the military effort. He also dealt with the major points raised in the hearing officer's report. Defendant wrote that he had not stated his conscientious objection in his Selective Service questionnaire and in his petition for naturalization because his belief had not yet developed when he filed them. He challenged the finding that he had only a superficial knowledge of the doctrines of the Radio Church of God and stated that the hearing officer had not really questioned him about the doctrines of the church except to ask if it sanctioned divorce. He claimed that he was deeply versed in the doctrines of the church and attached score sheets of examinations given in conjunction with a Bible correspondence school of the church in which his grades ranged from ninety-six per cent to one hundred per cent. On the question of tithes he stated that the Radio Church of God never had requested contributions, that he had only recently become employed and that he had already sent a small contribution to the church. He sought to explain his interest in obtaining conscientious objector forms shortly before his academic failure and claimed that in any event he could not have known in May that he would be dismissed from college a month later.

Finally, as a general rebuttal defendant stated that the best proof of his sincerity was his qualification as a draftsman and the ready availability of employment in the locality where he lived which would have afforded him a draft deferment. Such employment, however, would be in an arsenal or in a defense plant, which he claimed he would not accept on religious grounds.

We do not, of course, decide the weight which should be given to defendant's reply. We are concerned only with the question whether the information it contains was substantial enough to require that the State Director should have had it before him in acting on defendant's request for an appeal to the President. While the reply might not have altered the State Director's conclusion, it is clearly not outside the bounds of probability that it could have led him to arrive at a decision in defendant's favor.[7] This is especially so in a case such as this, where the subjective sincerity of defendant's belief was the issue vital to the determination of his conscientious objector claim. The hearing officer in expressing his opinion that defendant did not sincerely entertain such a belief quoted a part of Judge Friendly's apt comment on sudden accessions of belief, in United States v. Corliss, 280 F.2d 808, 812 (2 Cir.1960): "Sudden accessions of belief may be utterly sincere, as the memorable one on the Damascus road; but they seldom synchronize so perfectly as Heise's [appellant's] with external facts making them convenient, and they normally manifest themselves in expressions more deeply personal than his."

The submission of the sincerity of defendant's belief in the present case to so searching and powerful a scrutiny made it all the more requisite that the ultimate judgment be informed by the substantial element of the defendant's personal reply to the charge of insincerity and the explanations which he offered. What he stated under the pressure of this adverse recommendation was a product which the reviewing officer should have had before him equally with the adverse recommendation.

It follows, therefore, that if the State Director's denial of defendant's request for an appeal to the President was made

---

7. See Briggs v. United States, 397 F.2d 370 (9 Cir. 1968).

without having defendant's reply before him, defendant suffered a denial of basic procedural fairness in the administration of the regulations provided for challenging his classification.

The conviction followed from the erroneous ruling of the district judge that the burden was on the defendant rather than on the government to produce evidence that defendant's reply was in the file at the time of the State Director's decision. In the circumstances of this case this erroneous ruling substantially affected the rights of the defendant, who is, therefore, entitled to a new trial.

The judgment will be vacated and a new trial awarded.