**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William Jay LOUWSMA, Defendant–Appellant.**

**No. 91–3240.**

United States Court of Appeals, Eleventh Circuit.

Sept. 2, 1992.

Stephen K. Johnson, Gainesville, Fla., for defendant-appellant.

Russell C. Stoddard, Karla R. Spaulding, Asst. U.S. Attys., Tampa, Fla., for plaintiff-appellee.

Appeal from the United States District Court for the Middle District of Florida.

Before EDMONDSON, Circuit Judge, and RONEY *, and GIBSON **, Senior Circuit Judges.

RONEY, Senior Circuit Judge:

The defendant was charged with committing drug offenses in Collier County which was in the Southern District of Florida at the time of the offense but had been transferred to the Middle District of Florida by the time of the indictment. The defendant contends that the Middle District lacked jurisdiction to indict and try him for the offense committed in Collier County, and that such action violated his rights under the Sixth Amendment. He relies on the general statute which provides that whenever a county is transferred from one district to another, prosecutions for offenses committed within that county shall be commenced in the original district as if the county had not been transferred. We hold that the specific statute which transferred Collier County to the Middle District overrides by implication that provision of the general statute so that the Middle District of Florida did have jurisdiction, and that the commencement of the action in the Middle District did not violate defendant's rights under the Sixth Amendment. We affirm the district court's decision denying the defendant's motion to dismiss.

On September 19, 1989, a federal grand jury in the Middle District of Florida returned an indictment charging defendant William Jay Louwsma, along with a number of other individuals, with four counts of marijuana violations of 21 U.S.C. §§ 841, 846, 952, 963, and 960, and 18 U.S.C. § 2. Superseding indictments charging additional defendants were returned by the grand jury in October 1989 and August 1990.

After the district court denied his motion to dismiss, Louwsma entered a plea of guilty to Count One charging conspiracy to import in excess of 1,000 kilograms of marijuana in violation of 21 U.S.C. § 963, preserving his right to appeal the trial court's jurisdiction. The Government dismissed the remaining counts. On March 6, 1991, Louwsma was sentenced to two years incarceration.

### Jurisdiction Issue

Louwsma bases his jurisdictional argument on 18 U.S.C. § 3240, which provides that when a county is transferred from one district to another, prosecutions for offenses within a district prior to transfer shall take place as if such county had not been transferred.[1] Since the offenses with which Louwsma was charged occurred in 1986 in Collier County, which was then in the Southern District of Florida, and redistricting of the Middle and Southern Districts was not effective until February 18, 1989, Section 3240 provides that jurisdiction over the offenses lies solely within the Southern District. *See Lewis v. United States*, 279 U.S. 63, 49 S.Ct. 257, 73 L.Ed. 615 (1929) (considering the defendant's challenge to the jurisdiction of the district court from which the county in which the offense occurred had been transferred under a statute similar to 18 U.S.C. § 3240, the Supreme Court found that the original district remained empowered to indict and

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. The statute reads:

Whenever any new district or division is established, or any county or territory is transferred from one district or division to another district or division, prosecutions for offenses committed within such district, division, county, or territory prior to such transfer, shall be commenced and proceeded with the same as if such new district or division had not been created, or such county or territory had not been transferred, unless the court, upon the application of the defendant, shall order the case to be removed to the new district or division for trial.

18 U.S.C. § 3240 (1985).

try offenses which occurred prior to the effective date of the transfer even though the indictment was not returned until after the county had been transferred into the northern district). *See also Hayes v. United States,* 407 F.2d 189 190–91 (5th Cir. 1969), *cert. dismissed,* 395 U.S. 972, 89 S.Ct. 2133, 23 L.Ed.2d 777 (1969) (where place of offense is transferred to newly created district after the commission of the offense, 18 U.S.C. § 3240 "empowers an altered district to commence prosecutions after the change for offenses committed within its prior boundaries before alteration" as if the new district had not been created); *Mizell v. Beard,* 25 F.2d 324 (N.D.Okla.1928) (newly created Middle District of Georgia, which encompassed the county in which the offense had been committed, had no jurisdiction over the offense because although the indictment stated that the offense occurred in the Middle District, no such district existed at the time the crime was committed).

Collier County was transferred to the Middle District by a special statute, the Judicial Improvements and Access to Justice Act, amending 28 U.S.C. § 89 [note]. This statute provides that the transfer "shall apply to any action commenced in ... the Middle District ... after [February 18, 1989]." [2] Thus, under this provision, the federal prosecution for Louwsma's crime in Collier County, commenced after February 18, 1989, would properly be brought in the Middle District.

Because 18 U.S.C. § 3240 and 28 U.S.C. § 89 are mutually inconsistent, the conflict must be resolved using general principles of statutory construction. It is a basic principle of statutory construction that a precisely drawn statute dealing with a specific subject controls over a statute covering a more generalized spectrum.

*Brown v. General Services Administration,* 425 U.S. 820, 834–35, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976). The Supreme Court has stated that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974).

Louwsma first contends that these principles of statutory construction are inapplicable because the two statutory provisions are not inconsistent. Louwsma reads section 89 to pertain only to actions filed and pending as of the date Collier County was transferred to the Middle District of Florida. Were this reading of section 89 correct, there would be no conflict between the two statutes. The clear language of the statute, however, provides otherwise. The amendments to section 89 [note] state that the newly constituted districts apply to "any action *commenced ... on or after* the effective date of this title," clearly requiring prosecution of Louwsma to take place within the new district. Pub.L. No. 100–702, Title X, § 1021(b), 102 Stat. 4642, 4672 (1989) (emphasis added). Section 3240, on the other hand, states that prosecutions commenced after the transfer shall be in the old district as if the county had not been transferred to the new district. The statutes are in direct conflict.

Louwsma further contends that even if the two provisions are inconsistent, section 3240 should control because it is more specific than section 89. Louwsma maintains that section 3240 is a special law because it mandates the appropriate jurisdiction in which to prosecute crimes occurring in localities transferred between judicial districts prior to the effective date of the

---

**2.** The Act provides:

(1) The amendments made by this section [transferring Collier, Glades and Hendry Counties to the Middle District of Florida] shall take effect 90 days after the enactment of this title [Nov. 19, 1988].

(2) The amendments made by subsection (a) [transferring Collier, Glades, and Hendry Counties to the Middle District of Florida] shall apply to any action commenced in the United States District Court for the Middle District of Florida, or in the United States District Court for the Southern District of Florida, on or after the effective date of this title, and shall not affect any action pending in either such court on such effective date. Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, Title X, § 1021(b), 102 Stat 4642, 4672 (1989).

transfer. According to the defendant, section 89 is a general law because it has general application to civil as well as criminal cases. Therefore, even if the two statutes conflict, Louwsma argues that section 3240 must control because it is the special law.

This argument does not properly reflect the statutes. The amendments to 28 U.S.C. § 89 are specific in nature in that they apply to only three counties in Florida which were transferred from one federal district to another. 18 U.S.C. § 3240, on the other hand, is a statute of general application. Before the predecessor provisions to section 3240 were enacted, whenever Congress transferred counties from one district to another, it had to enact a special provision specifying whether the original district or the new district would have jurisdiction over crimes committed before the date of the transfer. *Lewis v. United States*, 14 F.2d 369, 370–71 (8th Cir.1926). To obviate the need for a separate jurisdictional statute for each transfer, Congress enacted the predecessor statute to section 3240. That statute was intended as a general provision which would obviate the special provisions that were previously required each time legislation was enacted to create new districts or alter existing ones. See 45 Cong.Rec.S. 3606 (1910) (remarks of Senator Heyburn).

In passing section 3240, however, Congress did not relinquish its right to decide in the future that certain crimes should be charged in the new district rather than the original district. In 28 U.S.C. § 89(b), Congress exercised its right to differ from the provisions of section 3240 with respect to the transfer of three Florida counties, thus allowing for the prosecution of crimes in the new rather than the original district.

■ Louwsma asserts that even if section 89 is the specific statute, a special statute will not override a conflicting general law unless Congress expresses a clear and manifest intention to repeal the general law, citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1979). *Radzanower*, however, does not control the issue in this case.

*Radzanower* addressed the effect of the enactment of a general statute on an existing specific statute. The Court in *Radzanower* merely held that a specific statute is not submerged by a later enacted statute covering a more general spectrum unless a "clear intention otherwise" can be discerned from the language or the legislative history of the statute. *Id.* at 153–55, 96 S.Ct. at 1992–94. The *Radzanower* holding does not pertain to the situation here, i.e., an existing general statute followed by the enactment of specific legislation. Indeed, the guidance provided by the *Radzanower* Court for instances in which a later enacted specific statute conflicts with existing general law is contrary to defendant's position. The *Radzanower* Court noted that one of the " 'well-settled categories of repeals by implication [is] where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one.' " *Id.* at 154, 96 S.Ct. at 1993 (quoting *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936)). The Middle District of Florida had jurisdiction over the charges in the Middle District jury indictment of Louwsma.

### *Sixth Amendment Issue*

■ Louwsma's second argument is that if the Government is permitted to prosecute his offenses in the Middle District of Florida, his Sixth Amendment rights will be violated. The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law....

U.S. CONST. amend. VI. Louwsma contends that this amendment guarantees him the right to be tried in the Southern District *because* it existed at the time of the commission of the crime.

A review of the sparse history of the Sixth Amendment is required to provide an understanding of the protection that this clause was designed to give to citizens of

the United States. As originally proposed by James Madison, then in the House of Representatives, the Sixth Amendment read, in part, as follows:

The trial of all crimes ... shall be by an impartial jury of freeholders of the vicinage, with the requisite of unanimity for conviction, of the right of challenge, and other accustomed requisites....

*Williams v. Florida*, 399 U.S. 78, 94, 90 S.Ct. 1893, 1902–03, 26 L.Ed.2d 446 (1970) (quoting 1 Annals of Cong. 435 (1789)). " '[V]icinage' mean[t] neighborhood, and 'vicinage of the jury' meant jury of the neighborhood or, in medieval England, jury of the county." *Id.* at 93 n. 35, 90 S.Ct. at 1902 n. 35.

Many of the framers considered the "vicinage" language either too vague or too strict. In place of "vicinage", the Conference Committee agreed on an amendment which referred to the "district" in which the crime was committed. *Id.* at 96, 90 S.Ct. at 1903. It was apparently understood that the districts mentioned in the amendment would be defined by Congress in the Judiciary Act, which was pending while the amendments were being debated. *Zicarelli v. Dietz*, 633 F.2d 312, 325 (3d Cir.1980) *cert. denied*, 449 U.S. 1083, 101 S.Ct. 868, 66 L.Ed.2d 807 (1981).

The intended meaning of the "previously ascertained by law" clause of the Sixth Amendment is unclear. This clause is not discussed specifically in the records of the framers, nor has it been subject to significant scrutiny by the courts. The language may have been included to ensure that Congress would not change a district specifically to affect the outcome of a given case. In *Zicarelli v. Dietz*, the United States Court of Appeals for the Third Circuit suggested that the clause may have been included so that Congress could not arbitrarily redefine a district so as to meet the circumstances of a particular criminal case. 633 F.2d at 323. The *Zicarelli* court was analyzing the meaning of the "previously ascertained by law" clause to determine whether it was a fundamental right such that it would be applicable to the states through the due process clause of the Fourteenth Amendment. *Id.* at 320. The court concluded that the clause does not apply to state criminal trials so as to prohibit transfer, upon request of the attorney general, of a defendant's trial to a county in which the crime had not been committed. The *Zicarelli* court admits, however, that this conclusion is speculative. Louwsma argues unpersuasively that *Zicarelli* also may be read for the broader proposition that the clause prohibits Congress from transferring the cite of a crime between districts after the commission of the offense. The only other cases cited by the defendant are unpersuasive because they address the "previously ascertained by law" clause in the context of a *newly created* district court which was not in existence at all at the time of the offense. *See Mizell v. Beard*, 25 F.2d 324 (N.D.Okla.1928); *United States v. Hackett*, 29 F. 848 (Cir.Ct.N.D.Cal.1887).

The Government asserts that the clause was intended to ensure that Congress would not change a district specifically to affect the outcome of a given case, just as bills of attainder are prohibited by the Constitution. The Government has cited to no cases offering support for its interpretation of the clause.

As in *Williams v. Florida*, the inability to divine the intent of the framers requires that in determining what is meant by "previously ascertained by law" we must turn to other than purely historical considerations. 399 U.S. at 98–102, 90 S.Ct. at 1904–07; *see also Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). The inquiry must focus upon the function served by the jury in contemporary society. The purpose of the jury trial is to "prevent oppression by the Government [by] ... '[p]roviding an accused with the right to be tried by a jury of his peers.' " *Williams*, 399 U.S. at 100, 90 S.Ct. at 1905 (quoting *Duncan v. Louisiana*, 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968)). The *Williams* Court further noted:

Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community partic-

ipation and shared responsibility that results from that group's determination of guilt or innocence.

*Id.*

The purpose of the Sixth Amendment is not offended by application of 28 U.S.C. § 89, placing jurisdiction over Louwsma's case in the Middle District of Florida. Because the county in which Louwsma's crime was committed is now in the newly constituted Middle District of Florida, trial in that district does more to ensure that the defendant is tried by a jury of peers from his community than would have been the case if he were subject to trial in either the newly constituted or the previously constituted Southern District of Florida. In the newly constituted Southern District, none of the jurors would be drawn from the county of the offense. Even in the previously constituted Southern District, a random draw of jurors would probably weigh the jury panel heavily in favor of Dade and Broward Counties in the southeast section of Florida, the population centers of the Southern District. On the other hand, under the newly constituted Middle District, the jurors would have been drawn from the southwest section of Florida, the general community in which the crime was committed.

Louwsma's Sixth Amendment rights were not violated by Congress' decision to have those crimes which were committed in Collier, Hendry, and Glades Counties before February 19, 1989, but which were not charged until after that date, charged and tried in the newly constituted Middle District of Florida.

The Middle District of Florida properly asserted jurisdiction over the crime for which Louwsma was charged.

AFFIRMED.