# United States Tax Court

T.C. Memo. 2023-36

NASSAU RIVER STONE, LLC,
GH MANAGER, LLC, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 28853-21.                    Filed March 16, 2023.

————

*Michael Todd Welty, Lyle B. Press, Macdonald A. Norman, Michael B. Coverstone, Andrew W. Steigleder, Danial A. Rosen*, and *Kevin M. Johnson*, for petitioner.

*Emily J. Giometti, Melissa L. Hilty, Mistala M. Cullen, Olga Y. Bykov, Russell Scott Shieldes*, and *Alexander D. DeVitis*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*: This case involves a charitable contribution deduction claimed for 2015 by Nassau River Stone, LLC (Nassau River), for the donation of a conservation easement. The Internal Revenue Service (IRS or respondent) issued a notice of final partnership administrative adjustment (FPAA) disallowing the deduction and determining penalties. Currently before the Court is respondent's Motion for Partial Summary Judgment contending that the IRS complied with the

[*2] requirements of section 6751(b)(1) by securing timely supervisory approval of all penalties at issue.[1] We agree and will grant the Motion.

## *Background*

The following facts are derived from the pleadings, the parties' Motion papers, and the Exhibits and Declarations attached thereto. They are stated solely for purposes of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Nassau River is a limited liability company (LLC) organized in October 2015. It is treated as a TEFRA partnership for Federal income tax purposes, and petitioner GH Manager, LLC, is its tax matters partner.[2] GH Manager is a Georgia LLC, and its principal place of business was in Atlanta, Georgia, when the Petition was timely filed. Nassau River is a Florida LLC, the property on which the easement was placed is in Florida, and Nassau River had its principal place of business in Florida when the Petition was filed. Absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Eleventh Circuit. *See* § 7482(b)(1)(E).

On December 3, 2015, after a series of transactions over the prior few months, Nassau River acquired roughly 193 acres of land (Property) in Polk County, Florida. Nassau River's acquisition of the Property resulted mainly from a capital contribution from its sole member, Imperial Aggregates, LLC (Imperial). Imperial then sold interests in Nassau River to investors desirous of large tax deductions.

On December 22, 2015, Nassau River granted an open-space conservation easement over the Property to the Atlantic Coast Conservancy, Inc. (ACC), a "qualified organization" for purposes of section 170(h)(3). The deed of easement was recorded on December 29, 2015. One week later, Nassau River donated a fee simple interest in the land to a passthrough entity wholly owned by ACC.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Before its repeal, TEFRA (the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71) governed the tax treatment and audit procedures for many partnerships, including Nassau River.

**[*3]**    Nassau River timely filed Form 1065, U.S. Return of Partnership Income, for its 2015 tax year.  On that return it claimed a charitable contribution deduction of $17,270,000 for its donation of the easement.  The IRS selected this return for examination.

The case was assigned to Revenue Agent (RA) Kenneth Kline, a member of Team 1257 in the IRS Large Business & International Division.  At that time Supervisory Revenue Agent Loretta Mills served as the acting team manager of Team 1257 and was RA Kline's immediate supervisor.  In June 2019, as the examination neared completion, RA Kline recommended assertion against Nassau River of the 40% penalty for gross valuation misstatement.  *See* § 6662(h).  In the alternative, he recommended assertion of a 20% penalty for substantial valuation misstatement, reportable transactions understatement, negligence, and/or substantial understatement of income tax.  *See* §§ 6662(b)(1)–(3), (c)–(e), 6662A(b).

RA Kline's recommendations to this effect were set forth in three documents: Form 5701, Notice of Proposed Adjustment (NOPA); Form 886–A, Explanation of Items; and a penalty lead sheet.  Copies of all three documents are included in the record.  On June 6, 2019, RA Kline communicated his recommendations by email to Ms. Mills, asking that she "sign off on" the penalty lead sheet and the NOPA.  On June 20, 2019, Ms. Mills digitally signed the NOPA as "Supervisory Internal Revenue Agent Group 1257" and the penalty lead sheet in the box captioned "Team Manager Initials."

The next day Ms. Mills replied by email to RA Kline's June 6 email, confirming that his recommendations had been "[a]pproved and signed."  Ms. Mills' email included at the bottom her name and her title, "Team Manager, LB&I, PTE, GHW Team 1257."  RA Kline has submitted declarations under penalty of perjury averring that "Ms. Mills was [his] immediate supervisor" and that these statements are true and accurate.

On June 24, 2019, RA Kline mailed petitioner a packet of documents, including Letter 1807 and attached Form 4549–A, Income Tax Discrepancy Adjustments, commonly known as a revenue agent report (RAR), setting forth his proposed adjustments and penalty recommendations.  This packet of documents constituted the first formal communication to petitioner that the IRS intended to assert the penalties discussed above, as recommended by RA Kline and approved by Ms. Mills.

[*4]     Anita Gill, senior counsel with the Office of Chief Counsel, was assigned to review a draft FPAA setting forth these adjustments. After reviewing the draft FPAA and the administrative file, Ms. Gill concluded that the 75% civil fraud penalty should also be asserted. *See* § 6663(a). Her recommendation to this effect was set forth in a penalty recommendation memorandum. Associate area counsel Mark Miller hand-signed and hand-dated this memorandum on July 18, 2021, stating that he was thus supplying "managerial approval of [the fraud] penalty." Mr. Miller confirmed that Ms. Gill "made the initial determination that the Fraud penalty . . . should apply in this case," that he was "the immediate supervisor of Anita Gill," and that he "personally approve[d] the initial determination set forth above in compliance with section 6751(b)(1)." Ms. Gill and Mr. Miller have submitted declarations under penalty of perjury averring that all of these statements are true.

After receiving written approval from Mr. Miller, Ms. Gill communicated to RA Kline her recommendation that the civil fraud penalty be included in the FPAA. On July 21, 2021, RA Kline and Ms. Mills executed a document captioned "Civil Fraud Penalty Memorandum regarding Nassau River." In this document they stated: "By our signatures below, we accept/concur with Senior Counsel's recommendation that the section 6663(a) civil fraud penalty be assessed on Nassau River." RA Kline and Ms. Mills affixed at the bottom of the memorandum their digital signatures, both dated July 21, 2021.

Two weeks later, on August 6, 2021, the IRS issued petitioner an FPAA, including Form 886–A, disallowing (among other things) the $17,270,000 deduction claimed for the conservation easement and determining the penalties discussed above. The FPAA constituted the first formal communication to petitioner that the IRS intended to assert the civil fraud penalty.

Petitioner timely petitioned this Court for readjustment of partnership items. On June 16, 2022, respondent filed a Motion for Partial Summary Judgment, seeking a ruling that the IRS has sufficiently complied with the section 6751(b) requirements for timely supervisory approval of the penalties determined in the FPAA. Petitioner opposed that Motion, and further briefing ensued.

[*5]                              *Discussion*

I.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. *See* Rule 121(b); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant partial summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520. Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d).

II.   *Analysis*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In *Kroner v. Commissioner*, 48 F.4th 1272, 1276 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73, the U.S. Court of Appeals for the Eleventh Circuit held that "the IRS satisfies [s]ection 6751(b) so long as a supervisor approves an initial determination of a penalty assessment before [the IRS] assesses those penalties." The court interpreted the phrase "initial determination of [the] assessment" to refer to the "ministerial" process by which the IRS formally records the tax debt. *See id.* at 1278. Absent stipulation to the contrary this case is appealable to the Eleventh Circuit, and we thus follow its precedent. *See Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

A.    *"Initial Determination"*

The record establishes that RA Kline recommended assertion of the section 6662 and 6662A penalties and secured timely approval for these penalties from his immediate supervisor, Ms. Mills. And the record establishes that Ms. Gill recommended assertion of the civil fraud penalty and secured timely approval for this penalty from her immediate supervisor, Mr. Miller. Ms. Gill then forwarded her recommendation

[*6] (thus approved) to RA Kline and Ms. Mills.  They likewise approved inclusion of the fraud penalty in the FPAA.  It thus seems obvious that the IRS has complied with section 6751(b)(1) in all respects—indeed, with belt and suspenders.

Petitioner struggles mightily, but in vain, to gin up a dispute of material fact.  Petitioner first challenges the status of RA Kline and Ms. Gill as the officers who made the "initial determination" of the penalties.  If they did not make the "initial determination," petitioner urges, their immediate supervisors were not the right people to approve the penalties.

In support of its argument that RA Kline "did not make the initial determination of the exam penalties," petitioner relies on a June 18, 2019, entry in the case activity record of Jon Fender, another exam team member, stating:  "TC noted that the 40% A/R Penalty for Gross Valuation Misstatement . . . is applicable and should be included on each RAR."  Petitioner speculates that "TC" may have been someone other than RA Kline, and that the immediate supervisor of "TC," as opposed to Ms. Mills, was the proper person to supply penalty approval.

Respondent has established that "TC" is the abbreviation for "Team Coordinator" and that RA Kline was the "Team Coordinator" for the Nassau River examination.  RA Kline and "TC" are thus the same person.  Respondent communicated this information to petitioner in discovery several times.  RA Kline has averred in a declaration under penalty of perjury that he was indeed the "TC" for this examination.  Petitioner's speculations to the contrary are not enough to establish a genuine dispute of material fact.  *See* Rule 121(d).

In any event, the "initial determination of [a penalty] assessment" is a formal action by the Examination Division directed to a particular taxpayer.  *See Frost v. Commissioner*, 154 T.C. 23, 32 (2020); *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 15 (2020).  The word "determination" has "an established meaning in the tax context" and denotes an action "with a high degree of concreteness and formality." *See Belair Woods*, 154 T.C. at 15.  An "initial determination" signifies a "consequential moment" of IRS action.  *Ibid.* (quoting *Chai v. Commissioner*, 851 F.3d 190, 221 (2d Cir. 2017), *aff'g in part, rev'g in part* T.C. Memo. 2015-42).  The notation by one exam team member, in his case activity record, that another team member believes a penalty appropriate, evidences at most preliminary deliberation among IRS officers.  Such deliberation cannot possibly constitute the "initial determination of [a

[*7] penalty] assessment" within the meaning of section 6751(b)(1). *See id.* at 9 (ruling that the statute "requires approval for the initial *determination* of penalty assessment, not for a tentative proposal or hypothesis").[3]

Petitioner next contends that Ms. Gill did not make the "initial determination" to assert the fraud penalty because, "[a]s an employee of the Office of Chief Counsel, [she] could not legally determine a penalty." Petitioner asserts that Chief Counsel attorneys may serve only as "advisors, not examiners," and that they "cannot be presumed to enjoy authority to determine penalties at the examination stage."

Again we disagree. We have previously held that an "initial determination" can be made by a Chief Counsel attorney, and we have rejected petitioner's suggestion that an "initial determination" cannot take the form of a recommendation or advice. *See Graev v. Commissioner*, 149 T.C. 485, 494–98 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016). The distinction petitioner seeks to draw between "advisors" and "examiners" is misplaced because "[a]ny 'initial determination' governed by section 6751(b), whether made by an examining agent or a chief counsel attorney, is mere advice until it receives the requisite supervisory approval and is finalized by the Commissioner or one of his agents." *Id.* at 496 (citing sections 7803(b)(2) and 7701(c)).

As the attorney assigned to review the draft FPAA, Ms. Gill had the responsibility to determine whether that document was accurate. She made the determination, within the scope of her official duties, that the fraud penalty applied. Respondent has shown, by citation of the Chief Counsel Directives Manual (CCDM) and other parts of the Internal Revenue Manual (IRM), that Ms. Gill as senior counsel had the

---

[3] Petitioner alternatively contends that RA Kline should not be regarded as having made the "initial determination" because his case activity record "shows that he spent only 64 hours on [p]etitioner's [a]udit." But section 6751(b)(1) does not inquire into the depth or comprehensiveness of IRS officers' review; it simply requires supervisory approval of the penalty recommendation. *See Pickens Decorative Stone, LLC v. Commissioner*, T.C. Memo. 2022-22, 123 T.C.M. (CCH) 1127, 1130. As we have said before: "The written supervisory approval requirement . . . requires just that: written supervisory approval." *Ibid.* (quoting *Raifman v. Commissioner*, T.C. Memo. 2018-101, 116 T.C.M. (CCH) 13, 28). We have repeatedly rejected any suggestion that a penalty approval form or other document must "demonstrate the depth or comprehensiveness of the supervisor's review." *Belair Woods*, 154 T.C. at 17. We do not second-guess the extent of the RA's or the supervisor's deliberations about whether penalties should be imposed. We confine our search to seeking evidence of written supervisory approval. *See Raifman*, 116 T.C.M. (CCH) at 27–28.

[*8] authority to make the initial determination of the fraud penalty. *See* CCDM 33.1.2.7.4 (June 2, 2014) (dealing with Chief Counsel's authority in reviewing notices of deficiency); *see also id.* 33.1.2.8(1) (Oct. 17, 2016) ("The role of the Field Counsel is to advise whether a deficiency notice should be issued, and if so, to make recommendations concerning the issues to be asserted . . . . The criteria for submitting a Notice of Deficiency to Field Counsel for review are in IRM 4.8.9.9 . . . .") She was the first IRS officer to recommend the fraud penalty, so her determination on this point was the "initial determination."

In any event, granting for the sake of argument petitioner's premise that an "examiner" had to make the initial determination, RA Kline, an examiner, did so. This fact is established by the penalty recommendation concurrence memorandum, electronically signed by RA Kline and Ms. Mills on July 21, 2021. RA Kline and his immediate supervisor there stated: "By our signatures below, we accept/concur with Senior Counsel's recommendation that the Section 6663(a) civil fraud penalty be assessed on Nassau River."

Supervisory approval need not be recorded on any particular form or document. The only requirement is a writing that manifests the immediate supervisor's intent to approve the penalty at issue. *See Tribune Media Co. v. Commissioner*, T.C. Memo. 2020-2, 119 T.C.M. (CCH) 1006, 1010–11. Regardless of whether the "initial determination" of the fraud penalty is thought to have been made by Ms. Gill or RA Kline, the penalty received the requisite approval from the appropriate supervisor(s).

B.     *Timely Approval in Writing*

Under a literal application of the standard enunciated by the Eleventh Circuit in *Kroner*, supervisory approval could seemingly be secured at any moment before actual assessment of the tax, which has not yet occurred. *See Kroner v. Commissioner*, 48 F.4th at 1279–81. But the Eleventh Circuit left open the possibility that supervisory approval in some cases might need to be secured sooner—before the supervisor "has lost the discretion to disapprove" assertion of the penalty. *See id.* at 1279 n.1; *cf. Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022) (treating supervisory approval as timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the penalty assessment"), *rev'g and remanding* 154 T.C. 68 (2020); *Chai v. Commissioner*, 851 F.3d at 220 (concluding that supervisory approval must be obtained at a time when "the supervisor has the discretion to give or withhold it").

**[\*9]**    The penalties other than the fraud penalty were approved by Ms. Mills on June 20, 2019.  She digitally signed the NOPA and the penalty lead sheet as RA Kline's "Team Manager."  RA Kline has supplied a declaration confirming that Ms. Mills supervised him during the Nassau River examination.  We conclude that Ms. Mills was RA Kline's "immediate supervisor" within the meaning of section 6751(b)(1).  *See Sand Inv. Co. v. Commissioner*, 157 T.C. 136, 142 (2021) (holding that the "immediate supervisor" is the person who supervises the agent's substantive work on an examination).

The fraud penalty was approved by Mr. Miller on July 18, 2021.  He hand-signed the penalty recommendation as Ms. Gill's "immediate supervisor."  Both individuals have supplied declarations confirming that Mr. Miller supervised Ms. Gill during the Nassau River assignment.  We conclude that Mr. Miller was Ms. Gill's "immediate supervisor" within the meaning of section 6751(b)(1).  *See Sand Inv.*, 157 T.C. at 142.

The FPAA was issued on August 6, 2021.  As of June 20, 2019, and July 18, 2021, the dates on which Ms. Mills and Mr. Miller supplied their respective approvals, the IRS examination remained at a stage where they had discretion to approve or disapprove the penalty recommendations.  *See Kroner v. Commissioner*, 48 F.4th at 1279 n.1.  Therefore, under the reading of *Kroner* most favorable to petitioner, the IRS complied with section 6751(b)(1) in this case because Ms. Mills and Mr. Miller timely approved the relevant penalties and did so in writing.

Tilting at windmills, petitioner vainly probes for a dispute of material fact.  Petitioner first asserts that Ms. Mills may not have been the "immediate supervisor" of RA Kline because "[r]espondent has failed to produce any written Designation to Act (Form 10247) or other documentary evidence to establish Agent Mills' supervisory authority."  But Petitioner cites no authority—and there is none—remotely suggesting that respondent must supply a Form 10247 to meet his burden in showing timely supervisory approval was obtained under section 6751(b).

The evidence conclusively establishes that Ms. Mills was RA Kline's immediate supervisor at all relevant times.  RA Kline submitted his penalty recommendations to her in that capacity.  Ms. Mills agreed with his recommendations and digitally signed two penalty approval forms as his "Team Manager."  Ms. Mills then replied to RA Kline's email, in which he had asked her to "sign off" on the penalties, by confirming    that    she    had    "[a]pproved    and    signed"    his    penalty

**[\*10]** recommendations as his "Team Manager." At no point did RA Kline or any other member of Team 1257 question Ms. Mills' supervisory authority. To the contrary, RA Kline has submitted declarations under penalty of perjury averring that "Ms. Mills was [his] immediate supervisor" and that these statements are true and accurate. Petitioner offers nothing but speculation to the contrary.

The "presumption of regularity" likewise supports the actions of the IRS officers here. "The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Long Branch Land, LLC v. Commissioner*, T.C. Memo. 2022-2, at \*5 (quoting *Pietanza v. Commissioner*, 92 T.C. 729, 739 (1989), *aff'd*, 935 F.2d 1282 (3d Cir. 1991)). It remains a well-settled rule that "all necessary prerequisites to the validity of official action are presumed to be complied with." *Ibid.* (quoting *Lewis v. United States*, 279 U.S. 63, 73 (1929)); *see Mecom v. Commissioner*, 101 T.C. 374, 388 (1993) (holding that IRS officials "are presumed to have properly discharged their official duties"), *aff'd*, 40 F.3d 385 (5th Cir. 1994). Petitioner offers no evidence, much less "clear evidence," to overcome this presumption.

Petitioner next contends that "a question of fact exists as to the accuracy" of the electronic signatures that RA Kline and Ms. Mills affixed to the various documents. Petitioner complains that RA Kline's case activity record "does not show any activity on the dates he purportedly signed the documents." Petitioner asserts that this supposed uncertainty "require[s] the Court to take testimony and make credibility determinations" at trial.

Again we disagree. Section 6751(b)(1) does not require that supervisory approval be documented in any particular way, so long as it takes the form of a writing. *See Tribune Media*, 119 T.C.M. (CCH) at 1010–11. The statute "requires only personal approval in writing, not any particular form of signature or even any signature at all." *Deyo v. United States*, 296 F. App'x 157, 159 (2d Cir. 2008); *see Belair Woods*, 154 T.C. at 16 (holding that the statute "mandates only that the approval of the penalty assessment be 'in writing' and by a manager" (quoting *PBBM-Rose Hill, Ltd. v. Commissioner*, 900 F.3d 193, 213 (5th Cir. 2018))); *Palmolive Bldg. Invs., LLC v. Commissioner*, 152 T.C 75, 86 (2019).

**[\*11]** We have repeatedly held that a manager's signature on a penalty approval form, without more, is sufficient to satisfy the statutory requirements. *See Sparta Pink Prop., LLC v. Commissioner*, T.C. Memo. 2022-88, at \*8 (citing *Belair Woods*, 154 T.C. at 17); *see, e.g.*, *Thompson v. Commissioner*, 155 T.C. 87, 93–94 (2020); *Goddard v. Commissioner*, T.C. Memo. 2022-96; *Excelsior Aggregates, LLC v. Commissioner*, T.C. Memo. 2021-125. And we have regularly decided section 6751(b)(1) questions on summary judgment on the basis of IRS records and declarations from relevant IRS officers. *See, e.g.*, *Sand Inv.*, 157 T.C. at 142; *Long Branch Land*, T.C. Memo. 2022-2; *Excelsior Aggregates*, T.C. Memo. 2021-125. In so doing, we have rejected the notion that examining agents and their supervisors must be subjected to cross-examination. *See Thompson v. Commissioner*, T.C. Memo. 2022-80, at \*8; *Raifman*, 116 T.C.M. (CCH) at 27–28 (holding that cross-examination "would be immaterial and wholly irrelevant to ascertaining whether [the IRS] complied with the written supervisory approval requirement").

To reflect the foregoing,

*An order will be issued granting respondent's Motion for Partial Summary Judgment.*